# EXHIBIT A

## [Part 2]

PILLSBURY WINTHROP SHAW PITTMAN LLP
Jeffrey A. Kiburtz (Bar No. 228127)
jeff.kiburtz@pillsburylaw.com
Madison Kim (Bar No. 358249)
madison.kim@pillsburylaw.com
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: (213) 488-7100
Facsimile: (213) 629-1033

Attorneys for Plaintiffs
PACIFIC SHORE STONES, LLC,
PACIFIC SHORE STONES BAKERSFIELD, LLC, and
PACIFIC SHORE HOLDING, INC.

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/11/2025 5:20 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By G. Cordon, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| PACIFIC SHORE STONES, LLC; PACIFIC SHORE STONES BAKERSFIELD, LLC; and PACIFIC SHORE HOLDING, INC, <br><br> Plaintiffs, <br><br> v. <br><br> ALLIED PROPERTY & CASUALTY COMPANY; CHARTER OAK FIRE INSURANCE COMPANY; CONTINENTAL INSURANCE COMPANY; GREAT WEST CASUALTY COMPANY; HANOVER INSURANCE COMPANY; MASSACHUSETTS BAY INSURANCE COMPANY; THE TRAVELERS INDEMNITY COMPANY OF AMERICA; THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT; TRAVELERS PROPERTY & CASUALTY COMPANY OF AMERICA; VALLEY FORGE INSURANCE COMPANY; and DOES 1-20, <br><br> Defendants | Case No.: 25STCV10912 <br><br> **COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiffs Pacific Shore Stones, LLC, Pacific Shore Stones Bakersfield, LLC, and Pacific Shore Holding, Inc., allege for their Complaint against Defendants Allied Property & Casualty Company ("Allied"), Charter Oak Fire Insurance Company ("Charter Oak"), Continental Insurance Company ("Continental"), Great West Casualty Company ("Great West"), Hanover Insurance Company ("Hanover"), Massachusetts Bay Insurance Company ("Massachusetts Bay"), Travelers Indemnity Company of America ("Travelers-A"), Travelers Indemnity Company of Connecticut ("Travelers-C"), Travelers Property Casualty Company of America ("Travelers-PCA"), and Valley Forge Insurance Company ("Valley Forge"), and Does 1-20 as follows:

## OVERVIEW OF ACTION

1.     Pacific Shore Stones, LLC ("Pacific Shore")[1] is a California-based company that began operations in 2004.  It operates as a distributor of natural and manufactured stone products used in residential and commercial applications.  Among other locations, it operates a 45,000 square foot facility in North Hollywood, California.

2.     Pacific Shore has been sued in more than 130 underlying tort lawsuits which allege, generally, that Pacific Shore is liable for bodily injuries allegedly caused by alleged exposure to allegedly harmful chemicals, metals, compounds, adhesives, resins, pigments and/or other substances allegedly present in stone products allegedly distributed by Pacific Shores (collectively, "Underlying Lawsuits").  To date all of the Underlying Lawsuits have been filed in California state courts, with the overwhelming majority filed in Los Angeles County Superior Court.

3.     Defendants are insurance companies that issued insurance policies to Pacific Shore or one of the other Plaintiffs between 2004 and the present (collectively, "Policies").  Subject to the terms and conditions thereof, the Policies generally provide coverage for amounts that Pacific Shore or other insureds are obligated to pay to plaintiffs in the Underlying Lawsuits for bodily injuries that take place, in whole or in part, during their respective policy periods.  The Policies also provide, again subject to

---

[1]     The other plaintiffs (Pacific Shore Stones Bakersfield, LLC and Pacific Shore Holding, Inc.) are insureds under one or more of the insurance policies addressed herein and also seek a declaration of their rights as further described herein.

their terms and conditions, that the issuing insurers will defend Pacific Shore or other insureds against claims or lawsuits that give rise to a potential for coverage under the terms of the policies.

4.    Various disputes have arisen between one or more of the Plaintiffs and Defendants related to the coverage provided by the Policies for the Underlying Lawsuits.  These disputes include, *inter alia*, whether some or all of the Defendants have a duty to defend certain Underlying Lawsuits, whether certain Policies issued by Allied cannot be located, as Allied contends, whether California law is applicable to disputes between the parties, including to issues related to allocation of defense costs and settlements between and among multiple Defendants, whether certain exclusions under the Policies apply in whole or in part to the Underlying Lawsuits, how settlements should be apportioned between and among triggered Policies, whether each triggered Policy must pay on an "all sums" basis defense costs and settlements or judgments up to its applicable limits of liability, and what responsibilities Defendants collectively have when a settlement demand is made that is within the collective limits of the Policies.

5.    Pacific Shore and the other Plaintiffs therefore bring this action to obtain declaratory relief on issues in dispute between and among the parties as further described herein.  Plaintiffs reserve the right to amend this complaint to seek declaratory relief on other issues that may arise between the parties and damages for breach of contract and damages and punitive damages for breach of the implied covenant of good faith and fair dealing, including for breaches and other wrongful conduct that one or more Defendants have already committed.

## PARTIES

6.    Pacific Shore Stones LLC is a limited liability company formed under the laws of the State of California, with its principal place of business in North Hollywood, California.

7.    Pacific Shore Stones Bakersfield, LLC is a limited liability company formed under the laws of the State of California, with its principal place of business in Bakersfield, California.

8.    Pacific Shore Holding, Inc. is a Texas corporation with its principal place of business in Austin, Texas.

9.    On information and belief, Defendant Allied Property & Casualty Company is an Iowa corporation with its principal place of business in Columbus, Ohio and has at all relevant times availed

itself of the California market by transacting the business of insurance within this state and county by, among other items, issuing policies to insureds including Pacific Shore based in California and otherwise agreeing to cover risks located here, and/or by defending, settling, adjusting and/or otherwise handling underlying lawsuits filed here by parties alleging that their injuries bear a sufficient nexus to this jurisdiction to have their claims adjudicated here.

10. On information and belief, Defendant Charter Oak Fire Insurance Company is a Connecticut corporation with its principal place of business in Hartford, Connecticut and has at all relevant times availed itself of the California market by transacting the business of insurance within this state and county by, among other items, issuing policies to insureds including Pacific Shore based in California and otherwise agreeing to cover risks located here, and/or by defending, settling, adjusting and/or otherwise handling underlying lawsuits filed here by parties alleging that their injuries bear a sufficient nexus to this jurisdiction to have their claims adjudicated here.

11. On information and belief, Defendant Continental Insurance Company is a Pennsylvania corporation with its principal place of business in Chicago, Illinois and has at all relevant times availed itself of the California market by transacting the business of insurance within this state and county by, among other items, issuing policies to insureds including Pacific Shore based in California and otherwise agreeing to cover risks located here, and/or by defending, settling, adjusting and/or otherwise handling underlying lawsuits filed here by parties alleging that their injuries bear a sufficient nexus to this jurisdiction to have their claims adjudicated here.

12. On information and belief, Defendant Great West Casualty Company is a Nebraska corporation with its principal place of business in South Sioux City, Nebraska and has at all relevant times availed itself of the California market by transacting the business of insurance within this state and county by, among other items, issuing policies to insureds including Pacific Shore based in California and otherwise agreeing to cover risks located here, and/or by defending, settling, adjusting and/or otherwise handling underlying lawsuits filed here by parties alleging that their injuries bear a sufficient nexus to this jurisdiction to have their claims adjudicated here.

13. On information and belief, Defendant Hanover Insurance Company is a New Hampshire corporation with its principal place of business in Worchester, Massachusetts and has at all relevant

times availed itself of the California market by transacting the business of insurance within this state and county by, among other items, issuing policies to insureds including Pacific Shore based in California and otherwise agreeing to cover risks located here, and/or by defending, settling, adjusting and/or otherwise handling underlying lawsuits filed here by parties alleging that their injuries bear a sufficient nexus to this jurisdiction to have their claims adjudicated here.

14.     On information and belief, Defendant Massachusetts Bay Insurance Company is a New Hampshire corporation with its principal place of business in Worchester, Massachusetts and has at all relevant times availed itself of the California market by transacting the business of insurance within this state and county by, among other items, issuing policies to insureds including Pacific Shore based in California and otherwise agreeing to cover risks located here, and/or by defending, settling, adjusting and/or otherwise handling underlying lawsuits filed here by parties alleging that their injuries bear a sufficient nexus to this jurisdiction to have their claims adjudicated here.

15.     On information and belief, Defendant Travelers Indemnity Company of America is a Georgia corporation with its principal place of business in Hartford, Connecticut and has at all relevant times availed itself of the California market by transacting the business of insurance within this state and county by, among other items, issuing policies to insureds including Pacific Shore based in California and otherwise agreeing to cover risks located here, and/or by defending, settling, adjusting and/or otherwise handling underlying lawsuits filed here by parties alleging that their injuries bear a sufficient nexus to this jurisdiction to have their claims adjudicated here.

16.     On information and belief, Defendant Travelers Indemnity Company of Connecticut is a Connecticut corporation with its principal place of business in Hartford, Connecticut and has at all relevant times availed itself of the California market by transacting the business of insurance within this state and county by, among other items, issuing policies to insureds including Pacific Shore based in California and otherwise agreeing to cover risks located here, and/or by defending, settling, adjusting and/or otherwise handling underlying lawsuits filed here by parties alleging that their injuries bear a sufficient nexus to this jurisdiction to have their claims adjudicated here.

17.     On information and belief, Defendant Travelers Property Casualty Company of America is a Connecticut corporation with its principal place of business in Hartford, Connecticut and has at all

relevant times availed itself of the California market by transacting the business of insurance within this state and county by, among other items, issuing policies to insureds including Pacific Shore based in California and otherwise agreeing to cover risks located here, and/or by defending, settling, adjusting and/or otherwise handling underlying lawsuits filed here by parties alleging that their injuries bear a sufficient nexus to this jurisdiction to have their claims adjudicated here.

18.    On information and belief, Defendant Valley Forge Insurance Company is a Pennsylvania corporation with its principal place of business in Chicago, Illinois and has at all relevant times availed itself of the California market by transacting the business of insurance within this state and county by, among other items, issuing policies to insureds including Pacific Shore based in California and otherwise agreeing to cover risks located here, and/or by defending, settling, adjusting and/or otherwise handling underlying lawsuits filed here by parties alleging that their injuries bear a sufficient nexus to this jurisdiction to have their claims adjudicated here.

19.    On information and belief, the Defendants sued herein as Does 1-10, inclusive, are insurance companies that issued insurance policies, or otherwise provide coverage, to one or more Plaintiffs, and these defendants are therefore sued by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe and thereon allege that each of said fictitiously named defendants in some manner owes coverage, in whole or in part, for the Underlying Lawsuits alleged herein.  Each reference in the allegations of this Complaint to "Insurers" refers also to all defendants sued under fictitious names.

20.    The true names and capacities of the defendants sued herein as Does 11-20, inclusive, are unknown to Plaintiffs, and these defendants are therefore sued by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe and thereon allege that each of said fictitiously named defendants is in some manner responsible, in whole or in part, for the matters alleged herein.  Each reference in the allegations of this Complaint to "Insurers" refers also to all defendants sued under fictitious names.

## JURISDICTION AND VENUE

21.    The Court has jurisdiction over all persons named and all subject matters identified in this complaint.

COMPLAINT

22.    Plaintiffs are informed and believe, and thereon allege, that Defendants are or at all relevant times were doing business in the State of California and the County of Los Angeles, through intermediaries located in the United States and/or the State of California.  Defendants are subject to personal jurisdiction in the State of California by virtue of their extensive business operations in this State and issuing policies that cover California companies and risks located within the State, including the insurance policy issued to Rosecrans that is the subject of this action, which expressly covered a property located in Los Angeles County, California.

23.    This action arises out of Defendants' contacts with the State of California, including but not limited to having availed themselves of the California market by underwriting, marketing, issuing, collecting premium, deriving revenue from and/or placing the insurance policy at issue in this action, which provides insurance coverage for environmental contamination in, under and/or around Los Angeles County, California.  This Court may exercise personal jurisdiction over Defendants.

24.    Venue is proper in this Court because Plaintiffs have insured operations within Los Angeles County and are being sued in Underlying Lawsuits venued in Los Angeles County for which coverage is owed under one or more Policies.  Defendants thus have obligations or liabilities that form the basis of this dispute that arise in Los Angeles County.

## **FACTUAL BACKGROUND**

### I.    **The Underlying Lawsuits**

25.    Plaintiffs in the Underlying Lawsuits generally allege, among other things, that Pacific Shore is liable for bodily injuries allegedly suffered between 2005 and the present that were allegedly caused by alleged exposure to harmful substances allegedly present in stone products allegedly distributed by Pacific Shores or other Plaintiffs herein.  Pacific Shores is typically one of dozens of companies sued in these lawsuits.

26.    By way of example, in litigation captioned *Cesar Manuel Gonzalez Quiroz v. American Marble & Onyx Company, Inc., et al*. Los Angeles Superior Court Case No. 24STCV01477 ("*Quiroz*"), plaintiff named Pacific Shore and 72 other defendants which allegedly were and/or are manufacturers, suppliers, distributors, importers, brokers, and/or contractors of industrial stone products.  Plaintiff therein alleges that between 2008 and 2023 he "cut, ground, drilled, edged, polished fabricated and/or

installed . . . artificial and natural stone products to become countertops in kitchens and bathrooms." *Quiroz* Third Amended Complaint ("TAC") ¶110. He further alleges that in performing that work, he was allegedly "exposed to and inhaled stone dust containing silica and other toxins and carcinogens," including "aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, [] vanadium[,] and volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene) emitted from these products. *Quiroz* TAC ¶111. As a result of that alleged exposure, plaintiff allegedly "developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage." *Quiroz* TAC ¶112. On information and belief, plaintiff seeks damages in excess of $19 million and made a Cal. Code Civ. Proc. § 998 settlement demand of $4 million to Pacific Shore alone.

27. Plaintiffs in most if not all of the other Underlying Lawsuits make allegations similar to those made in *Quiroz* with respect to, *inter alia*, alleged lung damage caused by alleged exposure to silica, metals and/or volatile organic compounds in stone products. The specific dates of the alleged bodily injuries vary, however, according to the individual circumstances of the allegedly injured workers.

28. In addition to lawsuits that may be brought against the Plaintiffs containing similar allegations, the Underlying Lawsuits as that term is used herein include:

| Plaintiff(s) | Case No. | County |
|---|---|---|
| Ana Gonzalez | 21STCV06984 | Los Angeles |
| Gustavo Reyes-Gonzalez | 22STCV31907 | Los Angeles |
| Adan Gomez-Rivera | 23STCV01612 | Los Angeles |
| Oscar Alvarado Ortiz | 23STCV06568 | Los Angeles |
| Fernando Bustos-Mondragon | 23STCV01424 | Los Angeles |
| Jamie Blanco Maciel & Helen Ortiz-Blanco | 23STCV12007 | Los Angeles |
| Jorge Estrella-Moreno, et al. | CGC-23-605643 | San Francisco |
| Angel Gallegos-Botello & Araceli Mejia | 23STCV06368 | Los Angeles |
| Rodolfo Garcia-Rosas & Alma Delia Llamas | 22STCV39957 | Los Angeles |
| Juan Rodrigo Gonzalez-Morin, et al. | 22STCV37000 | Los Angeles |

| Plaintiff(s) | Case No. | County |
|---|---|---|
| Mynor Lopez-Gonzalez & Ruby Noret-Lopez | 30-2023-01316441-CU-TT-CXC | Orange |
| Demetrio Luna-Reyes & Guillemina Valdez | 23STCV00238 | Los Angeles |
| Martin Melendez-Murillo & Rufina Barajas | 23STCV08596 | Los Angeles |
| Arturo Montoya-Bautista, et al. | 23STCV11727 | Los Angeles |
| William Moz-Murcia | 23STCV06384 | Los Angeles |
| J. Guadalupe Reyes-Cuevas, et al. | 23STCV00260 | Los Angeles |
| Dennys Rene Rivas-Williams | 23STCV08523 | Los Angeles |
| Leobardo Segura-Meza & Mirin Sanchez | 22STCV38729 | Los Angeles |
| Wendy Viridiana Solano Claustro, et al. | 23STCV11602 | Los Angeles |
| Jose Guadalupe Soto-Rodriguez, et al. | 23STCV08440 | Los Angeles |
| Cesar Manuel Gonzalez Quiroz | 24STCV01477 | Los Angeles |
| Fernando Barajas-Salomon | 24STCV01615 | Los Angeles |
| Ernesto Figueroa, et al. | 24STCV01658 | Los Angeles |
| Domingo Ojeda-Alverdin, et al. | 23STCV31679 | Los Angeles |
| Evelin Liseth Gonzalez Rodriguez, et al. | 23STCV29755 | Los Angeles |
| Kristian Ricardo Figueroa-Lopez, et al. | CGC-24-611712 | San Francisco |
| Jose Luis Martir-Navarro & Silvia Rebeca Gudiel Garcia | 30-2023-01370092-CU-TT-CXC | Orange |
| Guillermo Mora de Los Santos | 30-2024-01392209-CU-TT-CXC | Orange |
| Jose Israel Menera-Servin | 24STCV05591 | Los Angeles |
| Salmeron | CGC-24-614256 | San Francisco |
| Hugo A. Casteneda Merida & Joscelyn Martinez | 24STCV11894 | Los Angeles |
| Jose Anibal Bustillo | CGC-24-614357 | San Francisco |
| Andrew Alatorre Medina and Maria Rita Ramos Abundiz | 24STCV10216 | Los Angeles |
| Esteban Samora Serrano | CGC-24-614333 | San Francisco |
| Marlon Omar Martinez Avila and Myrna Izabel Lopez Lopez | 30-2024-01396482-CU-TT-CXC) | Orange |
| Antonio Lopez Castillo | 24STCV17052 | Los Angeles |
| Fernando Valencia Cardenas and Maria Sabina Rios Contreras | CGC-24-615696 | San Francisco |
| Luis Miguel Puentes Sanchez & Maria Gabriela Diaz Delgado | 24STCV18692 | Los Angeles |
| Fernando Antonio Acevedo | 24STCV18847 | Los Angeles |
| William Landa Verde | 24STCV19012 | Los Angeles |
| Pablo Antonio Rangel-Aguilar and Isidra Lamas Valenti | 24STCV19194 | Los Angeles |

| Plaintiff(s) | Case No. | County |
|---|---|---|
| Perez, Jesus Zarate and Zurysadayy Sanchez Aguilar | 30-2024-01416500-CU-TT-CXC | Orange |
| Daniel Morales Aguilar | 24STCV20124 | Los Angeles |
| Julio Gomez Carrero | 24STCV20969 | Los Angeles |
| Elio Enai Esquivel Rivera | 30-2024-01413168-CU-TT-CXC | Orange |
| Juan Sanchez Diaz | 24STCV21824 | Los Angeles |
| Jose Gutierrez-Rivero | 24STCV21794 | Los Angeles |
| Enrique Zarate Perez and Zoe Gomez | 30-2024-01423007 | Orange |
| Olegario Torres Orozco and Mayra Ojeda Cazares and Mayra Ojeda Cazares | 24STCV22677 | Los Angeles |
| Didier Francisco Alvarez Soto and Suzy Lopez | 24STCV23021 | Los Angeles |
| Tomas Blanco Maciel | 24STCV23289 | Los Angeles |
| Jose Luis Rosales Soria, and Viridiana Gomez | 24STCV22918 | Los Angeles |
| Fabiola Salmeron Reyes, et al | CGC-24-617972 | San Francisco |
| Martin Cardona-Alcaraz, et al | 24STCV23567 | Los Angeles |
| Martin Angel De La Cruz Bazan and Rubi Nava Altamirano | 24STCV24107 | Los Angeles |
| Gerardo Reyes and Mabel Astral Reyes | 24STCV24490 | Los Angeles |
| Fernando Salmeron-Reyes and Marbella Salmeron Aguilar | CGC-24-617927 | San Francisco |
| Ismael Manzano Chavarria | 24STCV25222 | Los Angeles |
| Hugo Montoya Bautista and Alma Patricia Jaimez Cortes | 24STCV25416 | Los Angeles |
| Gerinson Reyes Gonzalez and Bertha Lizet Santamaria Banderas | 24STCV25604 | Los Angeles |
| Jose Manuel Ruiz and Marisa Cardenas | 24STCV25424 | Los Angeles |
| Marvin Rivas-Williams | 24STCV25592 | Los Angeles |
| Edgardo Ivan Quintanilla Turcios | 24STCV25867 | Los Angeles |
| Eric Reyes-Barriga and Arisbeth Melendez | 24STCV25868 | Los Angeles |
| Rodolfo Hernandez Herrera and Marbella Zambrano | 24STCV26071 | Los Angeles |
| David Partida Rivas and Sonia Trujillo Espinosa | 24STCV26130 | Los Angeles |
| Abraham Vargas Manzano and Maria Estela Vazquez | 24STCV25443 | Los Angeles |
| Eleazar Resendiz Cortes and Gabriela De La Cruz | 24STCV25458 | Los Angeles |
| Wilmer Eliser Ayala Hernandez | 24STCV28216 | Los Angeles |
| Javier Rojas Solorzano And Oliva Rojas | 24STCV28667 | Los Angeles |

COMPLAINT

| Plaintiff(s) | Case No. | County |
|---|---|---|
| Jose Alberto Gonzalez-Quiroz And Bessie Yosara Gomez Duran | 24STCV28180 | Los Angeles |
| Miguel Ramirez and Alma Bravo | 24STCV29217 | Los Angeles |
| Rodrigo Martinez and Raquel Martinez | 30-2024-01439717 | Orange |
| Alejandro Morales Sanchez and Marisela Morales | 24STCV29059 | Los Angeles |
| Arturo Luis Magana Sanchez and Guadalupe Saucedo | 24STCV28707 | Los Angeles |
| Lorenzo Quintero Ruiz | 24STCV24391 | Los Angeles |
| Karapet Shlaryan | 24STCV30826 | Los Angeles |
| David Olmedo Cruz | 24STCV31227 | Los Angeles |
| Jesus Ruben Garcia Olvera | 24STCV30982 | Los Angeles |
| Jesus Garcia Ruiz and Rosario Adriana Sanchez | CGC-24-619264 | San Francisco |
| Claudia Yesenia Lopez Matias de Esquivel and Elio Enai Esquivel Rivera | 30-2024-01435405-CU-TT-CXC | Orange |
| Jose Hernan Solares and Jaqueline Daisy Rojas | 30-2024-01436300-CU-TT-CXC | Orange |
| Jose Ramirez and Karen Ramirez | 24STCV28804 | Los Angeles |
| Ignacio Ladino Castillo | 24STCV29112 | Los Angeles |
| Gerardo Ramirez and Eufrocina Sanchez | 30-2024-01439369-CU-TT-CXC | Orange |
| Edgar Andres Mendez Romero and Elizabeth Garfiaz | 24STCV30872 | Los Angeles |
| Raul Ruiz Gutierrez and Susana Martinez Soto | 24STCV30963 | Los Angeles |
| Juan Antonio Campos and Maria Elsa Campos | 24STCV31323 | Los Angeles |
| Felipe Reyes and Rosa Reyes | 24STCV31319 | Los Angeles |
| Aramis Miguel Carmona Garizao | 30-2024-01443735 | Orange |
| Dennis Alexis Guillen Guzman and Iris Carolina Alberto | 24STCV31995 | Los Angeles |
| Rodolfo Sosa and Maria Guadalupe Sota | 24STCV32291 | Los Angeles |
| Eligio Morales Sanchez and Mayra Morales | 24STCV32207 | Los Angeles |
| Jonatan Manzano-Galindo and Legna Moreno | 24STCV33164 | Los Angeles |
| Isaias Maldonado Garcia and Sabina Maldonado | 24STCV33688 | Los Angeles |
| Manuel De Jesus Turcios Arevalo and Gloria Midey Turcios | 24STCV33716 | Los Angeles |
| Bictor Reyes Anguiano | 30-2024-01436094 | Orange |
| Adan Garcia Ortiz and Patricia Gavino Franco | CGC-24-620023 | San Francisco |

| Plaintiff(s) | Case No. | County |
|---|---|---|
| Filiberto Martinez Rodriguez and Guadalupe Capilla Avalos | 25STCV00980 | Los Angeles |
| Marco Vinicio Godinez Gomez and Maria Del Refugio Paz Chavez | 25STCV01095 | Los Angeles |
| Victor Torres Orozco and Sonia Venegas | 25STCV02326 | Los Angeles |
| Andres Noe Meza and Erica Meza | 25STCV03500 | Los Angeles |
| Pedro Alamillo Santos and Ana Margarita Portales | 25STCV03306 | Los Angeles |
| Diego Granados Castro and Andrea Morado Cuevas | CGC-25-622131 | San Francisco |
| Juan Manuel Sandoval | 25STCV03223 | Los Angeles |
| Joaquin Fernando Alvarado and Katia Nunez | (30-2025-01460547-CU-TT-CXC | Orange |
| Vidal Figuero Lazaro | 25STCV04191 | Los Angeles |
| Marvin Norberto Ipina Ramos and Claudia Rebeca Dubon Urizar | 30-2025-01460497-CU-TT-CXC | Orange |
| Alejandro Vazquez (aka Alejandro Vazquez Badillo) and Yolanda Alcala | CGC-25-622389 | San Francisco |
| Roberto Cruz Rivera | 25STCV04187 | Los Angeles |
| Jose Estudillo Urrutia and Alejandra Garcia-Sanchez | 30-2025-01460607-CU-TT-CXC | Orange |
| Aldo Adrian Granados Castro and Veronica Zarco Vargas | CGC-25-622365 | San Francisco |
| Floriberto Vazquez and Rosa Vazquez | CGC-25-622320 | San Francisco |
| Julian Zalmeron Reyes | CGC-25-622444 | San Francisco |
| Jose Manuel Granados Castro and Erendira Jakelin Magdaleno | CGC-25-622324 | San Francisco |
| Pablo Figueroa Zamora | CGC-25-622349 | San Francisco |
| Julio Mendez Reyes | 25STCV03340 | Los Angeles |
| Carlos Antonio Mancia Palacios | 25STCV04184 | Los Angeles |
| Luis Alonso Turcios and Maria Turcios | 25STCV03744 | Los Angeles |
| Rolando Sanchez Flores and Angelica Lopez Vasquez | 25STCV02748 | Los Angeles |
| Ricardo Manzano Gomez and Dalia Isabel Manzano | 25STCV03892 | Los Angeles |
| Esteban Hernandez Maravilla and Maricela Hernandez | 25STCV03837 | Los Angeles |
| Felipe Torres Hernandez | 25STCV04195 | Los Angeles |
| Marco Antonio Bermudez Ruiz and Alba Lizeth Galiano Flores | 25STCV04297 | Los Angeles |
| Levi Dimas Gomez-Rodriguez | 25STCV04388 | Los Angeles |
| Ricardo Manzano Galindo | 25STCV06635 | Los Angeles |
| Raymundo Cruz Martinez | 30-2025-01465671-CU-TT-CXC | Orange |

| Plaintiff(s) | Case No. | County |
|---|---|---|
| Victor Manuel Martinez Rios and Lourdes Gallegos Ramirez | 30-2025-01467451-CU-TT-CXC | Orange |
| Juan Carlos De La Hoya Sanchez and Mayra Muro | 25STCV07348 | Los Angeles |
| Vicente Sanchez Reyes and Sally Contreras Sanchez | 25STCV07360 | Los Angeles |
| Manuel Gomez Lovo and Ana Julia Garcia De Gomez | 25STCV07418 | Los Angeles |
| Israel Dominguez Torres | 25STCV07410 | Los Angeles |
| Maria Estela Vazquez Ibarra and Abraham Vargas Manzano | 25STCV07802 | Los Angeles |

29.     Pacific Shores disputes all of the allegations, and is vigorously defending itself in the Underlying Lawsuits.  Based upon what is currently known about the allegations, plaintiffs' alleged injuries, settlement demands made to date, settlements to date, current trial dates, and potential judgments, Plaintiffs are informed and believe, and on that basis allege, that all of the Defendants' settlement-related responsibilities under California law will be triggered by one or more settlement demands made by plaintiffs in the Underlying Lawsuits in the near future.

**II.     The Policies**

30.     Plaintiffs are informed and believe, and on that basis allege, that Defendants are insurance companies that issued insurance policies ("Policies") to one or more of the Plaintiffs herein or under which one or more of the Plaintiffs herein qualify as an "Insured" or as "Insureds."

31.     Plaintiffs are informed and believe, and on that basis allege, that, subject to the terms and conditions of the specific Policies, each of the Defendants agreed to pay, up to the limits of liability of each respective Policy, all sums that an "Insured" becomes "obligated to pay as damages" because of "bodily injury" that takes place during the policy period of each respective Policy.  The term "bodily injury" is generally defined to include, subject to the terms and conditions of the specific Policies, injury, sickness and disease, among other items.  Each of the Defendants further agreed, subject to the terms and conditions of the specific Policies, to defend an insured from any lawsuit that gives rise to a potential for indemnity coverage under any given Policy.

32.     Plaintiffs are informed and believe, and on that basis allege, that some of the Policies were issued on a primary basis, meaning that, subject to the actual terms and conditions of the insurance

policies, the issuing Defendant's obligations to defend and make indemnity payments are triggered immediately upon a qualifying lawsuit or claim being made against an "Insured" and without regard to whether other Defendants might also have defense or payment obligations to the Insured. As a term of convenience, and without prejudice to Plaintiffs' right to recharacterize insurance policies, any such Policies are generically referred to as "Primary Policies."

33.     Plaintiffs are informed and believe, and on that basis allege, that other Policies were issued on an umbrella basis, meaning that the issuing Defendant's obligations to defend and make indemnity payments on behalf of an insured may not be triggered until certain conditions have been met, including, potentially, and subject to the actual terms and conditions of the respective insurance policy, when the immediately underlying, scheduled underlying insurance, if any, does not provide coverage or the applicable per-occurrence or aggregate limits thereof have been exhausted or otherwise satisfied. As a term of convenience, and without prejudice to Plaintiffs' right to recharacterize insurance policies, any such Policies are generically referred to as "Umbrella Policies."

34.     Plaintiffs are informed and believe, and on that basis allege, that a Defendant's obligations under the express and implied terms of an Umbrella Policy arise prior to the time an immediate defense or indemnity payment obligation arises thereunder, including, as alleged further herein, by imposing upon a Defendant which issued an Umbrella Policy an obligation to stay reasonably apprised of developments in Underlying Lawsuits and be prepared to respond within a reasonable time period to any settlement demand from a plaintiff in an Underlying Lawsuit that exceeds the applicable per-occurrence or aggregate limits of the immediately underlying, scheduled underlying insurance, if any.

35.     Plaintiffs are informed and believe, and on that basis allege, and subject to discovery in this lawsuit, that Defendant Allied issued at least nine consecutive commercial general liability insurance policies between April 14, 2004 and April 14, 2013 (collectively, "Allied Policies"). On information and belief, the Allied Policies were issued under the same policy number, ACP BPWC 7822594307, and are Primary Policies which obligate Allied to, *inter alia*, provide any "Insured" with an immediate defense and indemnity coverage in any Underlying Lawsuit alleging, *inter alia*, exposure

to allegedly harmful silica, metals and/or volatile organic compounds which allegedly caused injury, sickness and/or disease during any applicable policy period of any of the Allied Policies.

36.    Plaintiffs are informed and believe, and on that basis allege, and subject to discovery in this lawsuit, that Defendant Charter Oak issued at least one commercial general liability policy, Policy No. Y-630-7F90298A-COF-15, effective April 30, 2015 to April 30, 2016 (the "Charter Oak Policy"). On information and belief, the Charter Oak Policy is a Primary Policy which obligates Charter Oak to, *inter alia*, provide any "Insured" thereunder with an immediate defense and indemnity coverage in any Underlying Lawsuit alleging, *inter alia*, exposure to allegedly harmful silica, metals and/or volatile organic compounds which allegedly caused injury, sickness and/or disease during the applicable policy period of the Charter Oak Policy.

37.    Plaintiffs are informed and believe, and on that basis allege, and subject to discovery in this lawsuit, that Defendant Continental issued at least three commercial umbrella liability policies, all of which were issued under policy number 6057499959, with effective periods of April 30, 2017 to April 30, 2018, April 30, 2018 to April 30, 2019 and April 30, 2019 to April 30, 2020, respectively (collectively the "Continental Policies").  On information and belief, the Continental Policies are Umbrella Policies which obligate Continental to, *inter alia*, provide any "Insured" thereunder with defense and indemnity coverage in any Underlying Lawsuit alleging, *inter alia*, exposure to allegedly harmful silica, metals and/or volatile organic compounds which allegedly caused injury, sickness and/or disease during the applicable policy period of the Continental Policies when, as further specified therein, the immediately underlying, scheduled underlying insurance, if any, does not provide coverage or the applicable per-occurrence or aggregate limits thereof, if any, have been or may be exhausted by payment of damages or otherwise satisfied.

38.    Plaintiffs are informed and believe, and on that basis allege, and subject to discovery in this lawsuit, that Defendant Great West issued at least one commercial general liability policy, Policy No. GWP86607A, effective May 2, 2011 to May 2, 2012 (the "Great West Policy").  On information and belief, the Great West Policy is a Primary Policy which obligates Great West to, *inter alia*, provide any "Insured" thereunder with an immediate defense and indemnity coverage in any Underlying Lawsuit alleging, *inter alia*, exposure to allegedly harmful silica, metals and/or volatile organic compounds

which allegedly caused injury, sickness and/or disease during the applicable policy period of the Great West Policy.

39.    Plaintiffs are informed and believe, and on that basis allege, and subject to discovery in this lawsuit, that Defendant Hanover issued at least three commercial umbrella liability policies, Policy Nos. UHD 9534265 00, UHD 9534265 01 and UHD 9534265 02, with effective periods of April 30, 2012 to April 30, 2013, April 30, 2013 to April 30, 2014, and April 30, 2014 to April 30, 2015, respectively (collectively the "Hanover Policies").  On information and belief, the Hanover Policies are Umbrella Policies which obligate Hanover to, *inter alia*, provide any "Insured" thereunder with defense and indemnity coverage in any Underlying Lawsuit alleging, *inter alia*, exposure to allegedly harmful silica, metals and/or volatile organic compounds which allegedly caused injury, sickness and/or disease during the applicable policy period of the Hanover Policies when, as further specified therein, the immediately underlying, scheduled underlying insurance, if any, does not provide coverage or the applicable per-occurrence or aggregate limits thereof, if any, have been or may be exhausted by payment of damages or otherwise satisfied.

40.    Plaintiffs are informed and believe, and on that basis allege, and subject to discovery in this lawsuit, that Defendant Massachusetts Bay issued at least three consecutive commercial general liability insurance policies, Policy Nos. ZDD 9534126 00, ZDD 9534126 01 and ZDD 9534126 02, with effective periods of April 30, 2012 to April 30, 2013, April 30, 2013 to April 30, 2014, and April 30, 2014 to April 30, 2015, respectively (collectively the "Massachusetts Bay Policies").  On information belief, the Massachusetts Bay Policies are Primary Policies which obligate Massachusetts Bay to, *inter alia*, provide any "Insured" with an immediate defense and indemnity coverage in any Underlying Lawsuit alleging, *inter alia*, exposure to allegedly harmful silica, metals and/or volatile organic compounds which allegedly caused injury, sickness and/or disease during any applicable policy period of any of the Massachusetts Bay Policies.

41.    Plaintiffs are informed and believe, and on that basis allege, and subject to discovery in this lawsuit, that Defendant Travelers-A issued at least two commercial general liability policies, Policy Nos. Y-630-7P762086-TIA-20 and Y-630-7P762086-TIA-21, effective April 30, 2020 to April 30, 2021 and April 30, 2021 to April 30, 2022, respectively (the "Travelers-A Policies").  On information and

belief, the Travelers-A Policies are Primary Policies which obligate Travelers-A to, *inter alia*, provide any "Insured" thereunder with an immediate defense and indemnity coverage in any Underlying Lawsuit alleging, *inter alia*, exposure to allegedly harmful silica, metals and/or volatile organic compounds which allegedly caused injury, sickness and/or disease during the applicable policy period of the Travelers-A Policies.

42.    Plaintiffs are informed and believe, and on that basis allege, and subject to discovery in this lawsuit, that Defendant Travelers-C issued at least one commercial umbrella liability policy, Policy No. YSM-CUP-7F90298A-TCT-15, effective April 30, 2015 to April 30, 2016 ("Travelers-C Policy"). On information and belief, the Travelers-C Policy is an Umbrella Policy which obligates Travelers-C to, *inter alia*, provide any "Insured" thereunder with defense and indemnity coverage in any Underlying Lawsuit alleging, *inter alia*, exposure to allegedly harmful silica, metals and/or volatile organic compounds which allegedly caused injury, sickness and/or disease during the applicable policy period of the Travelers-C Policy when, as further specified therein, the immediately underlying, scheduled underlying insurance, if any, does not provide coverage or the applicable per-occurrence or aggregate limits thereof, if any, have been or may be exhausted by payment of damages or otherwise satisfied.

43.    Plaintiffs are informed and believe, and on that basis allege, and subject to discovery in this lawsuit, that Defendant Travelers-PCA issued at least one commercial general liability policy, Policy No. Y-630-7P762086-TIL-23, effective April 30, 2023 to April 30, 2024 ("Travelers-PCA Policy"). On information and belief, and subject to discovery herein, unlike the other Policies at-issue here the Travelers-PCA Policy has an exclusion that applies to "bodily injury . . . arising out of or in any way related to the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of silica or products or substances containing silica." Plaintiffs do not currently seek coverage from Travelers-PCA for the Underlying Lawsuits, but have joined it as a Defendant given that other Defendants have asserted that covered losses must be allocated "pro-rata" to all insurers on the risk and Plaintiffs do not yet know whether such assertions allegedly implicate the period during which Travelers-PCA was on the risk.

44.    Plaintiffs are informed and believe, and on that basis allege, and subject to discovery in this lawsuit, that Defendant Valley Forge issued at least three consecutive commercial general liability

insurance policies, all of which bear Policy No. 6071883227, with effective periods of April 30, 2017 to April 30, 2018, April 30, 2018 to April 30, 2019 and April 30, 2019 to April 30, 2020, respectively (collectively the "Valley Forge Policies").  On information belief, the Valley Forge Policies are Primary Policies which obligate Valley Forge to, *inter alia*, provide any "Insured" with an immediate defense and indemnity coverage in any Underlying Lawsuit alleging, *inter alia*, exposure to allegedly harmful silica, metals and/or volatile organic compounds which allegedly caused injury, sickness and/or disease during any applicable policy period of any of the Valley Forge Policies.

45. Plaintiffs are informed and believe, and on that basis allege, that Defendants, including Does 1-20, issued insurance policies that are not specifically referenced above and that provide Plaintiffs with insurance coverage for the Underlying Lawsuits.  Without undertaking any obligation to do so, Plaintiffs reserve the right to amend this complaint to specifically identify any applicable insurance policy that is obtained through discovery.

46. Plaintiffs have paid all premiums due, provided notice, and have satisfied any other conditions precedent to filing this lawsuit and/or to triggering Defendants' obligations under the Policies or, alternatively, Defendants have waived or are estopped from asserting the alleged applicability of any conditions relevant to this lawsuit and/or their obligation to pay or provide policy benefits to Plaintiffs.

### III.    The Standards Applicable to Handling Insurance Claims

47. Pursuant to insurance industry custom and practice, and California insurance regulations and law, Defendants are required to adhere to certain standards related to the handling of insurance claims.  These and other standards supply terms and conditions that are implied into, and supplement, the express terms and conditions of insurance policies.  On information and belief, Plaintiffs allege that those standards include, *inter alia*, the following.

48. An insurer has an obligation to treat its insured fairly and in good faith.  When investigating a claim, an insurer has an obligation to provide a full, free, fair and objective investigation into all potential bases for coverage under any potentially applicable insurance policy.  An insurer must look at all of the facts that may support coverage under the relevant policy.  Once investigation of the claim is underway, the insurer also has an obligation to disclose to the insured all the possible aspects

and bases of coverage.  The insurer must also actively provide assistance to the insured so that the claim can be processed.  An insurer may not ignore its insured.

49.    When an insurance policy provides for a duty to defend, the insurer's duty arises immediately upon tender and continues until the insurer can conclusively establish, on the basis of undisputed facts, that there is no potential for coverage.  An insurer's duty to defend is considered to be a service that includes, *inter alia*, the mounting and funding of a defense on behalf of the insured with knowledgeable defense counsel appointed by the insurer.  If an insurer is uncertain whether it has a duty to defend, it must begin defending the insured immediately, and is permitted to reserve the right to decline coverage pending further investigation of the facts.  An insurer may not, however, delay providing a defense merely because it believes that an investigation could reveal facts showing that the underlying claim is not covered.

50.    Apart from the duty to defend, which gives rise to an immediate obligation on the part of the insurer as already alleged, an insurer has a duty to conduct an investigation in a proactive and timely fashion so that it may accept or deny coverage within a reasonable amount of time.  An insurer is required to immediately accept or deny a claim, in whole or in part, and in no event more than 40 calendar days after receiving notice.  If the insurer requires more time to determine whether a claim should be accepted or denied, it must provide the insured with written notice of the need for additional time within the 40-calendar day time frame.  Such written notice must then be provided every 30 calendar days until a determination is made or notice of a legal action is served.

51.    When a liability insurer is defending or otherwise on the risk, it may have a duty to settle a lawsuit brought against its insured.  When an opportunity to settle arises, including when a demand is made that is within the collective limits of liability of all potentially implicated insurance policies, or when a demand is made that exceeds the applicable per-occurrence or aggregate limits of the immediately underlying, scheduled underlying insurance, if any, identified in a policy written on an umbrella or excess basis, each insurer on the risk is obligated to conduct itself as though it alone were liable for the entire amount of a potential judgment that may be entered.  Each implicated insurer must therefore quickly determine whether settlement under those circumstances is reasonable, *i.e.*, whether in light of the underlying plaintiff's injuries and the probable liability of the insured, the ultimate judgment

is likely to exceed the amount of the settlement.  In making this determination an insurer cannot consider factors such as the limits imposed by the policy or a belief that the policy does not provide coverage. Then, once it is determined that a settlement under the circumstances would be reasonable, each insurer on the risk must make reasonable efforts to settle, including by offering to pay the full extent of the insured's liability up to the limits of the triggered insurer's policies.  An insurer's failure to follow these standards is a violation of industry custom and practice.  It does not matter whether other insurers may have also failed to follow these standards.

52.    Once the insurer has made a coverage determination, it must immediately communicate its decision to the insured and pay the portion owed.  Any bases for the denial of coverage must also be immediately provided in writing, listing all the factual and legal bases for such rejection or denial.

53.    An insurer cannot withhold payment and force its insured to file suit in order to obtain benefits owed under an insurance policy.  Offering the insured substantially less than the amounts due under the policy is a form of improperly withholding payment, as is improperly conditioning payment on the insured signing prejudicial claim forms that impair its rights to coverage for other amounts due under the policy.  When an insurer improperly denies a claim, or focuses solely on facts that would restrict coverage, or refuses to provide a coverage determination, or improperly conditions payment on the insured completing prejudicial claim forms, or withholds coverage owed under the policy, or otherwise forces an insured to file litigation to obtain the benefits of the insurance that it purchased, the insurer violates its obligation to provide a free, fair, and objective investigation and coverage determination.

54.    As alleged further below, there are disputes related to Defendants' obligations under these and other standards related to the handling of insurance claims.

## IV.    **The Coverage Disputes**

55.    Plaintiffs are informed and believe, and on that basis allege, that Defendant Allied issued multiple Policies between 2004 and 2009.  Defendant Allied, however, contends that it cannot locate the policies.  There exists a dispute between one or more Plaintiffs and Allied as to whether such Policies were issued.

56.     Plaintiffs are informed and believe, and on that basis allege, that one or more Defendants are obligated to defend each of the Underlying Lawsuits.  Multiple Defendants have, however, asserted that they do not have any obligation to defend Pacific Shore or other Plaintiffs in one or more Underlying Lawsuits.  Disputes therefore exist between one or more Plaintiffs and multiple Defendants as to whether certain Defendants have an obligation to defend certain Underlying Lawsuits.

57.     Plaintiffs are informed and believe, and on that basis allege, that one or more of the Defendants have duties under their respective Policies to act in good faith and fairly, taking into account the totality of the circumstances, in fulfilling their contractual duties regarding the settlement of potentially covered claims, including in each of the Underlying Lawsuits.  These obligations require Defendants to meaningfully explore settlement opportunities when reasonable, including by taking into account the interests of Pacific Shore and the other Plaintiffs at least as much as their own, making reasonable assessments of the risks associated with proceeding with litigation, including Plaintiffs' costs of defense, and negotiating in good faith with the plaintiffs in the Underlying Lawsuits.  Multiple Defendants appear, however, to contend that they do not have any obligation to consider contributing to a settlement on behalf of Pacific Shore or other Plaintiffs in one or more Underlying Lawsuits.  Disputes therefore exist between one or more Plaintiffs and multiple Defendants as to whether certain Defendants have an obligation to contribute to the settlement of certain Underlying Lawsuits.

58.     Plaintiffs are informed and believe, and on that basis allege, that one or more of the Defendants have duties under their respective Policies notwithstanding the alleged presence of exclusions for "silica," "silica-related dust," or other alleged formulations of silica-related exclusions. Multiple Defendants have, however, asserted that they do or may not have any obligation under their Policies due to the alleged presence of exclusions for "silica," "silica-related dust," or other alleged formulations of silica-related exclusions.  Disputes therefore exist between one or more Plaintiffs and multiple Defendants as to whether and the extent to which the alleged presence of exclusions for "silica," "silica-related dust," or other alleged formulations of silica-related exclusions are in the Policies and limit coverage for one or more of the Underlying Lawsuits.

59.     Plaintiffs are informed and believe, and on that basis allege, that one or more of the Defendants have duties under their respective Policies notwithstanding the alleged presence of

exclusions for "contaminants," "pollutants" or other similar terms.  Multiple Defendants have, however, asserted that they do or may not have any obligation under their Policies due to the alleged presence of exclusions for "contaminants," "pollutants" or other similar terms.  Disputes therefore exist between one or more Plaintiffs and multiple Defendants as to whether and the extent to which the alleged presence of exclusions for "contaminants," "pollutants" or other similar terms limit coverage for one or more of the Underlying Lawsuits.

60.     Plaintiffs are informed and believe, and on that basis allege, that disputes currently exist between the Plaintiffs and one or more Defendants about whether and/or how the Policies operate when, for example, a single lawsuit triggers several Defendants' Policies.  Must each individual Defendant with a duty to defend pay only a pro-rata "share" of the defense costs, as some Defendants appear to contend, leaving Plaintiffs to pursue the other Defendants for their respective shares?  Or is each Defendant with a duty to defend obligated to provide a complete defense, and is thereafter free to pursue contribution or indemnity from the other Defendants on its own behalf?

61.     Plaintiffs are informed and believe, and on that basis allege, that other disputes currently exist between the Plaintiffs and Defendants concerning how the Policies do or will operate in the context of, for example, a settlement demand by one or more of the plaintiffs in Underlying Lawsuits that triggers one or more of the Defendants' Policies.  For example, when an Underlying Lawsuit alleges bodily injury across multiple policy periods, how would a settlement be allocated between those policies?  When a settlement implicates multiple policy periods, and the portion allocable to a single policy period exceeds the applicable limit of that policy, is the excess value allocated to the other implicated Primary Policies or, alternatively, the Umbrella Policy in that same year?

## FIRST CAUSE OF ACTION

### (Declaratory Relief – Allied Policies)

62.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

63.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Allied issued multiple Policies between 2004 and 2009.  Defendant Allied, however, contends that it cannot locate the policies.  There exists a dispute between Plaintiff and Allied as to whether such Policies were issued.

64.    A judicial determination of this controversy is necessary and appropriate for the parties to ascertain their respective rights and duties with respect to the aforementioned Policies.

## SECOND CAUSE OF ACTION

### (Declaratory Relief – Duty to Defend)

65.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

66.    Plaintiffs are informed and believe, and on that basis allege, that one or more Defendants are obligated to defend each of the Underlying Lawsuits.  Multiple Defendants have, however, asserted that they do not have any obligation to defend Pacific Shore or other Plaintiffs in one or more Underlying Lawsuits.  Disputes therefore exist between one or more Plaintiffs and multiple Defendants as to whether certain Defendants have an obligation to defend certain Underlying Lawsuits.

67.    A judicial determination of this controversy is necessary and appropriate for the parties to ascertain their respective rights and duties with respect to which Defendants have a duty to defend which Underlying Lawsuit.

## THIRD CAUSE OF ACTION

### (Declaratory Relief – Duty to Consider Settlement Demands)

68.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

69.    Plaintiffs are informed and believe, and on that basis allege, that one or more of the Defendants have duties under their respective Policies to act in good faith and fairly, taking into account the totality of the circumstances, in fulfilling their contractual duties regarding the settlement of potentially covered claims, including in each of the Underlying Lawsuits.  These obligations require Defendants to meaningfully explore settlement opportunities when reasonable, including by taking into account the interests of Pacific Shore and the other Plaintiffs at least as much as their own, making reasonable assessments of the risks associated with proceeding with litigation, including Plaintiffs' costs of defense, and negotiating in good faith with the plaintiffs in the Underlying Lawsuits.  Multiple Defendants appear, however, to contend that they do not have any obligation to consider contributing to a settlement on behalf of Pacific Shore or other Plaintiffs in one or more Underlying Lawsuits.  Disputes

therefore exist between one or more Plaintiffs and multiple Defendants as to whether certain Defendants have an obligation to contribute to the settlement of certain Underlying Lawsuits.

70.     A judicial determination of this controversy is necessary and appropriate for the parties to ascertain their respective rights and duties with respect to which Defendants have a duty to defend which Underlying Lawsuit.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief – Alleged Silica-Related Exclusions)

71.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

72.     Plaintiffs are informed and believe, and on that basis allege, that one or more of the Defendants have duties under their respective Policies notwithstanding the alleged presence of exclusions for "silica," "silica-related dust," or other alleged formulations of silica-related exclusions. Multiple Defendants have, however, asserted that they do or may not have any obligation under their Policies due to the alleged presence of such exclusions.  Disputes therefore exist between one or more Plaintiffs and one or more Defendants as to whether and the extent to which the alleged presence of such exclusions, if any, limit coverage for one or more of the Underlying Lawsuits.

73.     A judicial determination of this controversy is necessary and appropriate for the parties to ascertain their respective rights and duties with respect to whether any of the Defendants' coverage obligations are limited in whole or in part due to the alleged presence of silica-related exclusions allegedly in their Policies.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief – Alleged Pollutant or Contaminant Exclusions)

74.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

75.     Plaintiffs are informed and believe, and on that basis allege, that one or more of the Defendants have duties under their respective Policies notwithstanding the alleged presence of exclusions for "pollutants," "contaminants," or similar terms.  Multiple Defendants have, however, asserted that they do or may not have any obligation under their Policies due to the alleged presence of

such exclusions.  Disputes therefore exist between one or more Plaintiffs and one or more Defendants as to whether and the extent to which the alleged presence of such exclusions, if any, limit coverage for one or more of the Underlying Lawsuits.

76.    A judicial determination of this controversy is necessary and appropriate for the parties to ascertain their respective rights and duties with respect to whether any of the Defendants' coverage obligations are limited in whole or in part due to the alleged presence of exclusions for "pollutants" or "contaminants" allegedly in their Policies.

## SIXTH CAUSE OF ACTION

**(Declaratory Relief – Allocation Of Defense Costs Between Multiple Triggered Defendants)**

77.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

78.    Plaintiffs are informed and believe, and on that basis allege, that each Defendant with a duty to defend any particular Underlying Lawsuit is obligated to defend such suit immediately, completely and entirely, albeit subject to a potential right to seek contribution or indemnity from other Defendants with an obligation to defend the same Underlying Lawsuit.  Multiple Defendants appear, however, to contend that their obligation to pay defense costs is limited to their alleged "pro rata" share of the total defense costs.  Disputes therefore exist between one or more Plaintiffs and one or more Defendants as to the extent of their defense obligations when there are multiple Defendants with an obligation to defend a particular Underlying Lawsuit.

79.    A judicial determination of this controversy is necessary and appropriate for the parties to ascertain their respective rights and duties with respect to each triggered Defendant's defense obligations when multiple Defendants have a duty to defend a particular Underlying Lawsuit.

## SEVENTH CAUSE OF ACTION

**(Declaratory Relief – Allocation Of Settlements Between Multiple Triggered Defendants)**

80.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

81.    Plaintiffs are informed and believe, and on that basis allege, that when a particular Policy is triggered by a particular Underlying Lawsuit, and there is a reasonable settlement demand that is

within the collective limits of all available insurance, each individual Defendant with a triggered Policy is obligated to offer to pay up to the full amount of the settlement demand up to the applicable limits of liability of the Policy subject to a potential right to seek contribution or indemnity from other Defendants which issued a Policy triggered by the same Underlying Lawsuit. Multiple Defendants appear, however, to contend that their obligation to contribute to a settlement is limited to their alleged "pro rata" share of the total settlement demand. Disputes therefore exist between one or more Plaintiffs and one or more Defendants as to the extent of their indemnity obligations when there are multiple Defendants with an obligation to settle a particular Underlying Lawsuit.

82.    A judicial determination of this controversy is necessary and appropriate for the parties to ascertain their respective rights and duties with respect to each triggered Defendant's settlement obligations when there are multiple Policies triggered by an Underlying Lawsuit.

## EIGHTH CAUSE OF ACTION

### (Declaratory Relief – Indemnity Obligations)

83.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

84.    Plaintiffs are informed and believe, and on that basis allege, that settlement demands will be made on them in multiple Underlying Lawsuits during the pendency of this lawsuit. Plaintiffs are informed and believe, and on that basis allege, that disputes will arise between one or more Plaintiffs and one or more Defendants as to the extent of one or more Defendants' indemnity obligations with respect to particular Underlying Lawsuits that come up for settlement during the pendency of this lawsuit.

85.    A judicial determination of this controversy is necessary and appropriate for the parties to ascertain their respective rights and duties with respect to each triggered Defendant's settlement obligations in the context of particular Underlying Lawsuits that come up for settlement during the pendency of this lawsuit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment and pray that this Court grant declaratory relief as provided herein and an award of such other and further relief that the Court deems just and proper.

DATED: April 11, 2025

Respectfully submitted,

PILLSBURY WINTHROP SHAW
PITTMAN LLP

By: _____
        JEFFREY A. KIBURTZ

Attorneys for Plaintiffs Pacific Shore Stones,
LLC, Pacific Shore Stones Bakersfield, LLC,
and Pacific Shore Holding, Inc.