STEPHEN M. HAYES (SBN 83583)
shayes@hayesscott.com
RYAN Z. KELLER (SBN 249193)
rkeller@hayesscott.com
HAYES SCOTT BONINO ELLINGSON & GUSLANI LLP
333 Twin Dolphin Road, Suite 230
Redwood City, California 94065
Telephone: 650.637.9100

Attorneys for Defendants
HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY

[Additional Counsel listed on signature page.]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PACIFIC SHORE STONES, LLC; PACIFIC SHORE STONES BAKERSFIELD, LLC; and PACIFIC SHORE HOLDING, INC,

Plaintiffs,

v.

ALLIED PROPERTY & CASUALTY COMPANY; CHARTER OAK FIRE INSURANCE COMPANY; CONTINENTAL INSURANCE COMPANY; GREAT WEST CASUALTY COMPANY; HANOVER INSURANCE COMPANY; MASSACHUSETTS BAY INSURANCE COMPANY; THE TRAVELERS INDEMNITY COMPANY OF AMERICA; THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT; TRAVELERS PROPERTY & CASUALTY COMPANY OF AMERICA; VALLEY FORGE INSURANCE COMPANY, and DOES 1 through 20,

Defendants

CASE NO. 2:25-cv-04370-MRA (MAAx)

**JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

Judge: Hon. Mónica Ramírez Almadani

Date: October 6, 2025
Time: 1:30 p.m.
Place: Courtroom 9B

[Filed concurrently herewith: Joint Appendix; Joint Request for Judicial Notice; Defendants' Separate Memoranda; Defendants' Declarations; and [Proposed] Order]

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ........................................ 1
FACTUAL BACKGROUND ........................................ 2
I. Pacific Shore's Allegations/Underlying Lawsuits ........................................ 2
II. Defendants' Insurance Policies ........................................ 5
LEGAL STANDARDS ........................................ 6
I. Judgment on the Pleadings ........................................ 6
II. Declaratory Relief ........................................ 6
III. Policy Interpretation ........................................ 6
ARGUMENT ........................................ 7
I. The Duty to Defend Is Determined at the Outset of an Action. ........................................ 7
II. Because All Bodily Injuries Arise Out of Exposure to Silica or Silica-Related Dust, the Silica Exclusions Preclude Coverage. ........................................ 8
III. Because the Injury-Causing Event (Exposure to Silica) Is Thought of As Pollution, the Pollution Exclusions Independently Preclude Coverage. ........................................ 10
IV. Widespread Dissemination Is Not Required for a Pollution Exclusion to Bar Coverage. ........................................ 12
V. Leave to Amend Would Be Futile. ........................................ 14
CONCLUSION ........................................ 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*24th & Hoffman Investors, LLC v. Northfield Insurance Company*, 82 Cal. App. 5th 825 (2022) ....7

*AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807 (1990) ....7

*American Casualty Co. of Reading, PA v. Miller*, 159 Cal. App. 4th 501 (4th Dist. 2008) ....13

*American Zurich Insurance Co. v. James N. Gray Co.*, 2014 U.S. Dist. LEXIS 186460 (C.D. Cal. Jul. 25, 2014) ....12

*Aram Logistics v. United States Liability Insurance Company*, 2024 WL 390076 (S.D. Cal. Jan. 31, 2024) ....14

*Belmonte v. Emplrs Ins. Co.*, 83 Cal. App. 4th 430 (2000) ....7

*Broome County v. The Travelers Indem. Co.*, 125 A.D.3d 1241 (N.Y. App. Div. 2015) ....11

*Brownfield v. Daniel Freeman Marina Hosp.*, 208 Cal. App. 3d 405 (Ct. App. 1989) ....6

*Clarendon Am. Ins. Co. v. Bay Inc.*, 10 F. Supp. 2d 736 (S.D. Tex. 1998) ....11

*Clemco Indus. v. Com. Union Ins. Co.*, 665 F. Supp. 816 (N.D. Cal. 1987) ....8

*Cold Creek Compost, Inc. v. State Farm Fire & Cas. Co.*, 156 Cal. App. 4th 1469 (1st Dist. 2007) ....10

*Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480 (9th Cir. 1984) ....6

*Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480 (1st Dist. 2005) ....passim

*Gunderson Fire Ins. Exch.*, 37 Cal. App. 4th 1106 (1995) ....7

*Haas v. Travelex Insurance Services Inc.*, 555 F.Supp.3d 970 (C.D. Cal. 2021) ....14

*Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076 (1993) ....8

*Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264 (9th Cir. 2010) ....14

*Hurley Constr. Co. v. State Farm Fire & Cas. Co.*,
10 Cal. App. 4th 533 (1992) ..................14

*Inns-by-the-Sea v. California Mutual Ins. Co.*,
71 Cal. App. 5th 688 (2021) ..................7

*LSH Co. v. Transamerica Life Ins. Co.*,
2020 U.S. Dist. LEXIS 188588 (C.D. Cal. Sep. 15, 2020) ..................6

*MacKinnon v. Truck Ins. Exchange*,
31 Cal. 4th 635 (2003) ..................10

Northfield Ins. Co. v. Sandy's Place, LLC,
530 F. Supp. 3d 952 (E.D. Cal. 2021) ..................6

*Ocean Towers Hous. Corp. v. Evanston Ins. Co.*,
772 F. App'x 459 (9th Cir. 2019) ..................8

*Pittelman v. Pierce*,
6 Cal. App. 4th 1436 (2d Dist. 1992) ..................6

*Riley v. Fitzgerald*,
178 Cal. App. 3d 871 (2d Dist. 1986) ..................6

*RLI Ins. Co. v. Gonzalez*,
411 F.App'x 696 (5th Cir. 2011) ..................11

*Storek v. Fidelity & Guar. Ins. Underwriters, Inc.*,
504 F.Supp.2d 803 (N.D. Cal. 2007) ..................8

*The Villa Los Alamos Homeowners Assn. v. State Farm General Ins. Co.*,
198 Cal. App. 4th 522 (2011) ..................13

*U.S. ex rel. Chunie v. Ringrose*,
788 F.2d 638 (9th Cir. 1986) ..................6

*Waller v. Truck Ins. Exchange, Inc.*,
11 Cal. 4th 1 (1995) ..................7

*Westoil Terminals Co. v. Indus. Indem. Co.*,
110 Cal. App. 4th 139 (2003) ..................7

## STATUTES

Cal. Civ. Code § 1636 ..................10

Cal. Civ. Code § 1639 ..................10

Fed. R. Civ. P. 12(c) ..................9

The insurer defendants ("Defendants") hereby submit this joint memorandum of points and authorities in support of their respective Motions for Judgement on the Pleadings. This brief addresses the allegations and issues common to all Defendants. Per the Order granting the stipulation (ECF 42), Defendants are concurrently filing separate memoranda of points and authorities that address the specific language in their respective policies and related issues.

## PRELIMINARY STATEMENT

Each Defendant issued one or more primary or excess/umbrella commercial liability policies to Plaintiffs Pacific Shore Stones, LLC; Pacific Shore Stones Bakersfield, LLC; and/or Pacific Shore Holding, Inc., ("Plaintiffs" or "Pacific Shore"), which contain a silica or silica-related dust exclusion, a pollution exclusion, and/or follow form to a policy with one or more of these exclusions (collectively "Policies").

California law is well settled that a policy exclusion precludes coverage if it is explicit and unambiguous. Therefore, California courts have consistently upheld the language of the policy exclusions barring coverage for bodily injury arising out of silica dust. The exclusions in the Defendants' Policies do precisely that here. The underlying lawsuits at issue (the "Underlying Lawsuits") allege that each plaintiff developed silicosis and other silica-related diseases from exposure to silica or silica-related dust from fabricating Plaintiffs' unfinished stone products. As exemplified by the underlying *Quiroz* complaint Pacific Shore relies upon (the "*Quiroz* Complaint"), the gravamen of the underlying claimants' allegations is that (1) Pacific Shore's stone products contained "***extremely high concentrations of crystalline silica (approximately 95%)***"; (2) such high concentrations "produced ***extremely high*** levels of respirable crystalline silica" in the "ordinary and expected use" of Pacific Shore's products; (3) "'fabricating' stone products produces ***large amounts*** of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic ***silicosis*** as well as lung cancer and various other ***silica-related*** diseases"; and

(4) the "silica" contained in Pacific Shore's products was a "***substantial factor***" in "causing, prolonging, and aggravating [claimants'] silicosis and [their] related and consequential injuries." *Quiroz* Compl. ¶¶ 95, 1307, 1366 (emphasis added); *see also* Joint Appendix in Support of Defendants' Motion for Judgment on the Pleadings ("Jt. App.") at Nos. 1, 2, 3.

Just as this Court recently held in the related case, *Hanover Am. Ins. Co. v. Francini, Inc*., 2025 U.S. Dist. LEXIS 70996, at *13 (C.D. Cal. Mar. 27, 2025), the plain reading of Defendants' silica exclusions independently bars coverage for the underlying injuries arising out of exposure to any substance containing silica dust. And, because the California Court of Appeal held in *Garamendi v. Golden Eagle Ins. Co*., 127 Cal. App. 4th 480, 486 (1st Dist. 2005) that "silica dust" "***most assuredly***" is what is commonly thought of as pollution' and 'environmental pollution," Defendants' pollution exclusions also preclude coverage for the underlying claims. Therefore, Defendants have no duty to defend Pacific Shore in the Underlying Lawsuits. Further, if there is no duty to defend, there cannot be a duty to indemnify.

Accordingly, based on the face of Pacific Shore's Complaint, the complaints in the Underlying Lawsuits, and the language of Defendants' policies, the court should grant this Rule 12(c) motion for judgment on the pleadings, enter judgment in favor of the Defendants, and dismiss the Complaint because all of Pacific Shore's causes of action are predicated on the existence of coverage where there is none.

## FACTUAL BACKGROUND

### I. Pacific Shore's Allegations/Underlying Lawsuits

Since 2021, at least one hundred and thirty-three (133) Underlying Lawsuits have been filed against Pacific Shore for alleged bodily injury that occurred during the relevant policy period(s), wherein each underlying plaintiff alleges they developed silicosis and related injuries from exposure to silica from working with products manufactured, distributed, and/or supplied by all the named defendants. *See* Compl. ¶ 2; Request for Judicial Notice ("RJN") Exs. 1-133.

As this Court held in *Hanover*, the "underlying state actions are all substantially similar," alleging that "underlying plaintiffs suffer from silicosis and related conditions and consequential injuries because of their exposure to ***silica*** and ***silica-related dust*** while working with the underlying defendants' products." *Hanover*, 2025 U.S. Dist. LEXIS 70996, at *4.[1] And Plaintiff alleges here that the *Quiroz* Complaint is representative of "most if not all of the Underlying Lawsuits." Compl. ¶ 27.

The *Quiroz* Complaint states as follows:

- Pacific Shore distributes and "support[s] fabricators, consumers, architects, builders and interior designers in selecting slabs for their projects." *Quiroz* Comp. ¶ 1042; *see also* Jt. App. at Nos. 1, 3.
- Pacific Shore's "***stone products contain[ed] approximately 95% crystalline silica that caused or contributed to Plaintiff's silicosis***, pulmonary fibrosis, progressive massive fibrosis, and other injuries." *Quiroz* Comp. ¶ 210 (emphasis added); *see also id.* ¶ 1044 ("Section 3 of [Pacific Shore's] Safety Data Sheet for 'Pacshore Quartz,' . . . states that the product is comprised of '93% natural quartz stone (SiO2) and 7% resin binder and colorant.'"); *see also* Jt. App. at Nos. 1, 3.
- Pacific Shore's "[s]tone slabs or blocks are commercial products that ***require fabrication*** prior to installation for a consumer." *Quiroz* Compl. ¶ 94 (emphasis added). "[S]tone slabs typically arrived inside the fabrication shop . . . ." *Id.* ¶ 103; *see also* Jt. App. at Nos. 1, 3.
- "Cutting, grinding, drilling, chipping, edging, and/or polishing (collectively 'fabricating') stone products produces ***<u>large amounts</u> of respirable crystalline silica dust*** which stone fabrication workers inhale, typically causing chronic ***silicosis*** as well as lung cancer and various other ***silica***-related diseases."

[1] Sixty-nine (69) of one hundred thirty-three (133) (i.e., 51%) of the underlying lawsuits addressed in *Hanover* are also at issue here. The remaining sixty-four (64) underlying complaints are substantially similar for the same reasons.

*Quiroz* Compl. ¶ 95 (emphasis added); *see also id.* ¶ 1045 ("Section 2 of the [Pacific Shore] Safety Data Sheet [for Pacshore Quartz] (Hazards Identification) states: '. . . ***dust*** created when cutting or grinding the quartz slab ***produces crystalline silica which is harmful to health***.'") (emphasis added); *see also* Jt. App. at Nos. 3, 4.

- "[A]ir-purifying respirators are inadequate to protect workers fabricating artificial stone from ***silicosis*** due to the ***extremely high crystalline silica*** content of [Pacific Shore's] product." *Quiroz* Compl. ¶ 1048 (emphasis added); *see also id.* ¶ 1050 ("exposures to respirable crystalline silica from fabricating artificial stone are such that workers must always wear respiratory protection"); *see also* Jt. App. at No.(2) 4; 5.
- The underlying claimants regularly "***inhaled silica-containing dust*** from [Pacific Shore's] stone products." *Quiroz* Compl. ¶¶ 108-109 (emphasis added); *see also* Jt. App. at Nos. 1, 2.
- "[Pacific Shore was] aware that [its] artificial stone products contained ***extremely high concentrations of crystalline silica (approximately 95%), which produced extremely high levels of respirable crystalline silica*** in their ordinary and expected use." *Quiroz* Compl. ¶ 1366 (emphasis added); *see also* Jt. App. at Nos. 3, 4.
- "[Pacific Shore] owed [claimant] a legal duty to exercise due care in manufacturing, designing, testing, importing, producing, supplying, brokering, contracting, and/or distributing stone products to which [claimant] was exposed in his work as a countertop fabricator and installer." *Quiroz* Compl. ¶ 1282; *see also* Jt. App. at Nos. 4.
- "[Pacific Shore] negligently and carelessly manufactured, imported, produced, sold, tested, failed to test, supplied, contracted, brokered and/or distributed the stone slab and block products to which [claimant] was exposed in his work as a countertop fabricator and installer." *Quiroz* Compl. ¶ 1284; *see also* Jt. App.

at No. 3.

- "Each of [Pacific Shore's] stone products contained ***silica***, toxic metals, and other fibrogenic substances, that entered [claimant's] body and were ***substantial factors*** in causing, prolonging, and aggravating his ***silicosis*** and his ***related and consequential injuries***." *Quiroz* Compl. ¶ 1307; *see also* Jt. App. at No. 1.

Indeed, the crux of the underlying allegations against Pacific Shore is that:

> Throughout the time that Pacific Shore Stones LLC sold its artificial stone products, exposing stone countertop fabricators and installers to ***respirable crystalline silica*** from the company's products, Pacific Shore Stones' members were aware that the company's artificial stone products were defective because they contained ***extremely high concentrations of crystalline silica***, were aware that the use instructions that Pacific Shore Stones provided were inadequate to prevent ***silicosis*** and would actually cause silicosis in exposed workers, and were aware that fabrication companies could not protect fabricators and installers from the lethal silicosis hazard presented by Pacific Shore Stones' defective artificial stone products.

*Quiroz* Compl. ¶ 1053 (emphasis added); *see also* Jt. App. at No. 4. Notably, this core passage focuses entirely on silica and silica dust as having caused the underlying claimants' injuries.

## II. Defendants' Insurance Policies

Each Defendant issued one or more commercial general liability or commercial umbrella liability policies to Pacific Shore, which contain a silica or silica-related dust exclusion, a pollution exclusion, and/or follow form to a policy with one or more of these exclusions. Each Defendant will address its specific policy

provisions and exclusions in individual memoranda in support of their motion for judgment on the pleadings per this Court's order. *See* Dkt. 42.

## LEGAL STANDARDS

### I. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), is proper when the moving party clearly establishes on the face of the pleadings that (1) no material issue of fact remains to be resolved; and (2) it is entitled to judgment as a matter of law. *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984).

While the court must accept the complaint's factual allegations as true, it "need *not* assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986); *accord LSH Co.*, 2020 U.S. Dist. LEXIS 188588, at *15 (C.D. Cal. Sep. 15, 2020) ("[A] court is not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotations omitted).

### II. Declaratory Relief

California law requires that a claim for declaratory relief demonstrate (1) a proper subject of declaratory relief and (2) an actual controversy involving justiciable questions relating to the rights or obligations of a party. *Brownfield v. Daniel Freeman Marina Hosp.*, 208 Cal. App. 3d 405, 410 (Ct. App. 1989).

### III. Policy Interpretation

Insurance policy interpretation is governed by state law. In California, policy interpretation is a question of law to be evaluated by the court. *Northfield Ins. Co. v. Sandy's Place, LLC*, 530 F. Supp. 3d 952, 962 (E.D. Cal. 2021).[2] "Where an

---

[2] Defendants do not concede that California law applies. However, there is "no need . . . to reach the conflict of law issue" for purposes of this Motion. *See Pittelman v. Pierce*, 6 Cal. App. 4th 1436, 1443 (2d Dist. 1992) (affirming summary judgment for defendants without deciding conflict of law issue); *see also Riley v. Fitzgerald*, 178 Cal. App. 3d 871, 875 (2d Dist. 1986) (finding that conflict of law analysis is

exclusion is clear and unambiguous, it is given its literal effect." *Westoil Terminals Co. v. Indus. Indem. Co.*, 110 Cal. App. 4th 139, 146 (2003) (internal quotations omitted). Thus, "[c]overage is ***precluded*** when the exclusionary language is explicit." *Belmonte v. Emplrs Ins. Co.,* 83 Cal. App. 4th 430, 435 (2000) (emphasis added).

The California Supreme Court directs that "[u]nder statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation (Civ. Code, § 1636). Such intent is to be inferred, if possible**,** ***solely from the written provisions*** of the contract. (*Id*., § 1639.)." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821–822 (1990) (emphasis added). Moreover, "[c]ourts will not strain to create an ambiguity where none exists."[3] *Waller v. Truck Ins. Exchange, Inc*., 11 Cal. 4th 1, 18-19 (1995); *accord Hanover*, 2025 U.S. Dist. LEXIS 70996 at *8; *Inns-by-the-Sea v. California Mutual Ins. Co*., 71 Cal. App. 5th 688, 698 (2021). And an insurer is free to limit the risks it assumes in its contracts. *24th & Hoffman Investors, LLC v. Northfield Insurance Company*, 82 Cal. App. 5th 825, 833 (2022); *see also Gunderson Fire Ins. Exch.,* 37 Cal. App. 4th 1106, 1118 (1995) ("An insurance company has the right to limit the coverage of a policy issued by it and the plain language of the limitation must be respected."); *Hanover*, 2025 U.S. Dist. LEXIS 70996 at *8 ("the insured reasonably can expect only the coverage afforded by the plain language of the contract") (internal quotations omitted).

## ARGUMENT

### I. The Duty to Defend Is Determined at the Outset of an Action.

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Ocean Towers Hous. Corp. v. Evanston Ins. Co.*, 772 F. App'x 459, 460

---

necessary only where there is "true conflict of law[]"). If the Complaint survives (it should not), Defendants may raise conflict of law issues at the appropriate time.

[3] There are no allegations in the Complaint that the Policies are ambiguous.

(9th Cir. 2019) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). Courts should "compare[] the allegations of the underlying complaints with the terms of the . . . Exclusion in the . . . policies" to determine if there is "no potential for coverage and thus no duty to defend." *Id.*

"Under California law, an insurer's duty to defend is determined by 'those facts known by the insurer *at the inception of a third party lawsuit*,' … or 'from the facts and inferences known to an insurer from the pleadings, available information and its own investigations *at the time of the tender of defense*,'. . . . there are no California cases holding that unpled facts, occurring after the filing of the third party's complaint, are sufficient to establish an insurer's duty to defend." *Storek v. Fidelity & Guar. Ins. Underwriters, Inc.*, 504 F.Supp.2d 803, 812 (N.D. Cal. 2007) (emphasis added).

## II. Because All Bodily Injuries Arise Out of Exposure to Silica or Silica-Related Dust, the Silica Exclusions Preclude Coverage.

All of the Underlying Lawsuits allege bodily injury arising in "substantial" part out of the inhalation of silica or silica-related dust resulting in silicosis. *See* Jt. App. Nos. 1-2. As the representative Complaint in *Quiroz* demonstrates, *see supra*, Part II.a., Pacific Shore's "stone products contained ***extremely high concentrations of crystalline silica (approximately 95%), which produced extremely high levels of respirable crystalline silica*** in their ordinary and expected use," which caused "chronic ***silicosis***" and "***silica-related diseases***." *Quiroz* Compl. ¶¶ 95, 210, 1307, 1366 (emphasis added); *see also* Jt. App. Nos. 4-5. Silicosis is a progressive, incurable, fibrotic lung disease caused by inhalation of respirable crystalline silica dust. *See Clemco Indus. v. Com. Union Ins. Co.*, 665 F. Supp. 816 (N.D. Cal. 1987). Silica-related dust is a ***mixture or combination*** of silica and other dust or particles. Thus, the mere presence of any other chemicals, metals, or compounds cannot defeat the application of the silica exclusion. And the plain language of the silica exclusions does ***not*** require that silica be the only component for the exclusion to apply.

Moreover, there are no allegations of bodily injury that arose separately from the alleged or actual inhalation of silica or silica-related dust. *See e.g.*, RJN, Ex. 1: *Quiroz* Compl. ¶ 1307 ("Each of [Pacific Shore's] stone products contained ***silica***, toxic metals, and other fibrogenic substances, that entered [claimant's] body and were ***substantial factors*** in causing, prolonging, and aggravating his ***silicosis*** and his ***related and consequential injuries***."); *see also* Jt. App. at No. 1. As such, the underlying claimants' allegations show that the bodily injuries they suffered arose from the silica dust emanated from the stone fabrication process and were not merely incidentally related to Plaintiff's silica-containing products.[4] This Court reached the same conclusion in *Hanover*.

In granting the insurers' motion for judgment on the pleadings on the ground that the silica exclusion barred coverage,[5] the Court explained that "on the face of the complaints, ***all allegations against [the insured] specifically address the crystalline silica*** in [the insureds'] artificial stone products," including the "insufficient warnings about exposure to crystalline silica" and the "insufficient instructions for preventing exposure to crystalline silica." *Hanover*, 2025 U.S. Dist. LEXIS 70996, at *12 (emphasis added). Therefore, the Court found that "these allegations are ***all*** focused on the risk of silica exposure, silicosis, and injuries related to silicosis that [the insured's] products allegedly pose." *Id.* (emphasis added). Comparing the allegations of the underlying complaints with the terms of the insurance policies, the Court concluded that: (i) "[t]he silica exclusion provides that the insurance policies do not apply to 'bodily injuries' arising 'in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust'";

[4] The *Quiroz* Complaint contains over 1,100 references to the term "silicosis" and over 900 references to the term "silica," further underscoring their central role in the claims.

[5] The Court granted leave to amend but cautioned that it is "skeptical that [the insured] can amend the Answer to cure the deficiencies identified herein consistent with the existing Answer and this Order." *Hanover*, 2025 U.S. Dist. LEXIS 70996, at *15 (C.D. Cal. Mar. 27, 2025). After the insured filed an Amended Answer, the insurers filed another Motion for Judgment on the Pleadings, which is currently pending before the Court.

(ii) "[a]ll the allegations against [the insured] are specific to silica or silica-related dust"; and (iii) "[t]he recovery sought against [the insured] is based on bodily injuries, sickness, or disease caused by that silica or silica-related dust." *Id.* at *13. The Court held that because "policy language is clear and unambiguous[,] [t]hese bodily injuries, which arise from silica or silica-related dust, ***fall squarely*** within the bounds of coverage [insurers] sought to exclude from their [p]olicies." *Id.* (emphasis added).

Just as it did in *Hanover*, the Court should find here that Defendants' silica exclusion precludes coverage for the Underlying Lawsuits.

### III. Because the Injury-Causing Event (Exposure to Silica) Is Thought of As Pollution, the Pollution Exclusions Independently Preclude Coverage.

Pacific Shore's claims are also independently barred by Defendants' pollution exclusions. In *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 653 (2003), the court directed that "the scope of the pollution exclusion" applied "to injuries arising from events commonly thought of as pollution, i.e., environmental pollution." The court instructed that the application of the exclusion requires consideration of the nature of the pollutant "in conjunction" with the mechanism (i.e., the "discharge, dispersal, release, or escape") of exposure. *MacKinnon*, 31 Cal. 4th at 653. The court observed that the "common understanding of the word 'pollute' indicates that it is something creating impurity, something objectionable and unwanted." *Id.* at 654 (internal quotations omitted). Multiple courts have applied the reasoning of *MacKinnon* to exclude coverage in a wide range of contexts, including claims involving the dissemination of silica dust. *See, e.g.*, *Garamendi*, 127 Cal. App. 4th 480, 483 (1st Dist. 2005) (involving workers' exposure to silica dust arising out of sandblasting operations); *see also Cold Creek Compost, Inc. v. State Farm Fire & Cas. Co.*, 156 Cal. App. 4th 1469, 1472 (1st Dist. 2007) (involving the spread of injurious odors from a compost facility).

Significantly, in *Garamendi*, the insured sought coverage for underlying suits

where claimants alleged to have suffered bodily injuries "as a result of their exposure to silica and silica dust" arising out of sandblasting operations involving the insured's products. 127 Cal. App. 4th at 483. The insurer had issued a commercial general liability policy to the insured, containing a "Total Pollution Exclusion Endorsement" that excluded coverage for bodily injury "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." *Id.* at 484. The *Garamendi* court rejected the insured's contention that the pollution exclusion was inapplicable and held that "even if silica is not one of the enumerated items listed in the policy definition of pollutants, that listing is not exclusive and silica dust nonetheless comes within the ***broad*** definition of 'any solid, liquid, gaseous, or thermal irritant or contaminant.'" *Id.* at 485-86. The court explained that "the widespread dissemination of silica dust as an incidental by-product of sandblasting operations ***most assuredly*** is what is 'commonly thought of as pollution' and 'environmental pollution.'" *Id.* at 486.

Notably, courts in multiple other jurisdictions have also held that silica and silica-containing dust are "pollutants" within the commonly understood meaning of the word in a commercial general liability policy. *See*, *e.g.*, *Clarendon Am. Ins. Co. v. Bay Inc.*, 10 F. Supp. 2d 736, 744 (S.D. Tex. 1998) (finding that "silica is within the ambit of 'pollution'" as used in a pollution exclusion); *RLI Ins. Co. v. Gonzalez*, 411 F.App'x 696, 698, 699 (5th Cir. 2011) ("Silica dust is unambiguously a 'pollutant' under the language of the Pollution Exclusion."); *Broome County v. The Travelers Indem. Co.*, 125 A.D.3d 1241, 1242 (N.Y. App. Div. 2015) (finding "silica dust" to be "within the policy definition of a pollutant" as an "irritant or contaminant").

Just as the underlying claimants in *Garamendi* alleged that silica-containing dust generated from sandblasting operations "is suspended in air and travels over a large distance, subjecting many workers in the area to an unreasonable risk of harm"

(*Garamendi*, 127 Cal. App. 4th at 483), the Underlying Lawsuits here allege that their use of Plaintiff's products "resulted in the generation and release of toxic airborne dusts and particulates" (*Quiroz* Compl. ¶ 114) in "***large amounts***" (*id.* ¶ 95) and "***extremely high concentrations***" (*id.* ¶ 1366); *see also* Jt. App. No. 5. Additionally, the underlying claimants allege that workers who are engaged in fabricating artificial stone products require the same protections "like that typically used by sandblasters" (i.e., the workers at issue in *Garamendi*) because the risk of harm is identical: "Given the extremely high concentration of crystalline silica in the product . . . and the consequent extremely high concentrations of respirable silica dust generated by fabrication processes, the highest level of respiratory protection is necessary to use the product safely . . . ." *Quiroz* Compl. ¶ 411; *see also* Jt. App. No. 5. These facts demonstrate that just like in *Garamendi*, the pollution exclusions in Defendants' Policies also bar coverage for the injuries alleged in the Underlying Lawsuits.

## IV. Widespread Dissemination Is Not Required for a Pollution Exclusion to Bar Coverage.

To the extent Pacific Shore may argue that a pollution exclusion only applies when the pollution is widespread, the Court should reject this contention. First, it has been recognized that "silica dust travels over a large distance, subjecting many workers in the area to an unreasonable risk of harm." *American Zurich Insurance Co. v. James N. Gray Co.*, 2014 U.S. Dist. LEXIS 186460, at *13 (C.D. Cal. Jul. 25, 2014) (internal quotations omitted). Second, neither the language of Defendants' pollution exclusions nor California law impose a requirement that pollution be widespread to trigger a pollution exclusion. Third, *Garamendi* specifically rejected that argument, holding that "[c]ontrary to claimant's suggestion, there need ***not*** be 'wholesale environmental degradation.'" 127 Cal. App. 4th at 486 (emphasis added). And, in *American Casualty Company of Reading, PA v. Miller*, the court also held that the mere fact that widespread contamination beyond the immediate area of effect

was prevented was ***not*** dispositive of whether the event at issue was "commonly thought of as environmental pollution." (emphasis added). 159 Cal. App. 4th 501, 516 (4th Dist. 2008) ("The test in *MacKinnon* is not based upon the extent of injury, but upon the type of pollutant and how it is released into the environment.").

Notably, in analyzing a pollution exclusion that precluded coverage for any loss caused by the "presence, release, discharge or dispersal of pollutants," the court in *The Villa Los Alamos Homeowners Assn. v. State Farm General Ins. Co.*, 198 Cal. App. 4th 522, 540 (2011) held that there was "release" of asbestos in the air, even though the contaminant was not "widely dispersed." The court reasoned that "the terms 'release' and 'escape' in a pollution exclusion 'connote some sort of freedom from containment' [citation]; 'the word 'dispersal,' when in conjunction with 'pollutant,' is commonly used to describe the spreading of pollution widely enough to cause its dissipation and dilution." *Id.* at 539 (alteration in original). The court further observed that "[a] one-time event can be a polluting event if it creates 'impurity, something objectionable and unwanted.'" *Id*. at 541. The court then reiterated that "***[t]he release of asbestos from a product into the air people breathe constitutes a health hazard for which no level of exposure is safe***." *Id*. (emphasis added). Therefore, the court concluded that "***[t]he release of asbestos in this case constituted environmental pollution within the meaning of the pollution exclusion***." *Id*. at 542 (emphasis added).

As underscored by the allegations of the Underlying Lawsuits, the same is true of silica. As in *Villa*, the Underlying Lawsuits allege the "release" of silica or silica-related dust into the air, occurring contemporaneously with any other alleged released pollutants. *See e.g.*, *Quiroz* Compl. ¶ 115 ("[claimant] inhaled silica, metal dust, and other toxins from said products that were generated and released during the intended use of said toxic mineral products manufactured, distributed, contracted, brokered and/or supplied by [Pacific Shore]"); *id*. ¶ 95 ("Cutting, grinding, drilling, chipping, edging, and/or polishing (collectively 'fabricating') stone products produces ***large***

***<u>amounts</u> of respirable crystalline silica dust*** which stone fabrication workers inhale, typically causing chronic ***silicosis*** as well as lung cancer and various other ***silica-***related diseases.") (emphasis added); *see also* Jt. App. No. 1.

Because the underlying claimants were exposed to pollution under California law, Defendants' respective Policies apply to bar coverage and Defendants have no duty to defend or indemnify Pacific Shore as a matter of law.

**V. Leave to Amend Would Be Futile.**

Leave to amend "is properly denied . . . if amendment would be futile." *Haas v. Travelex Insurance Services Inc*., 555 F.Supp.3d 970, 975 (C.D. Cal. 2021). (internal quotations omitted).

An insurer "owes no duty defend based upon mere speculation as to claims that" an underlying plaintiff might have brought or might bring in the future. *Aram Logistics v. United States Liability Insurance Company*, 2024 WL 390076, at *6 (S.D. Cal. Jan. 31, 2024). "An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at ***some*** future date." *Id.*; *see also Hurley Constr. Co. v. State Farm Fire & Cas. Co*., 10 Cal. App. 4th 533, 538 (1992) ("the insured may not speculate about unpled third party claims to manufacture coverage"); *see also Hudson Ins. Co. v. Colony Ins. Co*., 624 F.3d 1264, 1267–68 (9th Cir. 2010) ("These cases concluded that there was no potential for coverage, not because the complaint did not list a particular legal cause of action, but because the complaint did not allege any facts supporting a covered cause of action."). And, in *Garamendi* (finding pollution exclusion precluded a duty to defend in the silica context), the court denied discovery: "the complaints are based explicitly on the inhalation of silica dust arising from sandblasting operations. 'An insured may ***not*** trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." 127 Cal. App. 4th at 488 (emphasis added).

Here, Pacific Shore has not and cannot allege any facts supporting a covered cause of action related to the Underlying Lawsuits. All bodily injuries alleged arise from inhalation of silica or silica-related dust, commonly recognized as pollutants. Because the Policies' silica and/or pollution exclusions exclude coverage for the injuries alleged in the Underlying Lawsuits, Pacific Shore can state no viable claim in an amended complaint, and thus leave to amend here would be futile.

## CONCLUSION

Comparing the allegations in the Underlying Lawsuits to the unambiguous terms of each Policy, Defendants have no duty to defend, and therefore no duty to indemnify, as a matter of law. Defendants request that the Court grant their motions for judgment on the pleadings without leave to amend.

Dated: August 11, 2025

HAYES SCOTT BONINO
ELLINGSON & GUSLANI LLP

By: */s/ Ryan Z Keller*
STEPHEN M. HAYES
RYAN Z. KELLER
Attorneys for Defendants
HANOVER A INSURANCE COMPANY
and MASSACHUSETTS BAY
INSURANCE COMPANY

Dated: August 11, 2025

SIMPSON THACHER & BARTLETT LLP

By: */s/ Chet A. Kronenberg*
CHET A. KRONENBERG
ERICA SEDLER
DYLAN J. MEIER
Attorneys for Defendants
THE CHARTER OAK FIRE INSURANCE
COMPANY, THE TRAVELERS
INDEMNITY COMPANY OF AMERICA,

THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT; and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Dated: August 11, 2025

CLYDE & Co US LLP

By: */s/ Brian D. Harrison*
ALEX E. POTENTE
BRIAN D. HARRISION
DAVID M. RHODES
Attorneys for Defendants
CONTINENTAL INSURANCE COMPANY AND VALLEY FORGE INSURANCE COMPANY

Dated: August 11, 2025

TRESSLER LLP

By: */s/ Linda Bondi Morrison*
LINDA BONDI MORRISON
BENJAMIN J. BISHAY
Attorneys for Defendants
GREAT WEST CASUALTY COMPANY

Dated: August 11, 2025

COZEN O'CONNOR

By: */s/ Valerie D. Rojas*
VALERIE D. ROJAS
Attorneys for Defendants
ALLIED PROPERTY & CASUALTY COMPANY

## SIGNATURE CERTIFICATION

I hereby attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 11, 2025

By: /s/ Ryan Z. Keller
Ryan Z. Keller