JEFFREY A. KIBURTZ (#228127)
jeff.kiburtz@pillsburylaw.com
MADISON KIM (#358249)
madison.kim@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: (213) 488-7100
Facsimile: (213) 629-1033

SHAREEN SARWAR (#1632851) *(pro hac vice)*
shareen.sarwar@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone: (202) 663-8000
Facsimile: (202) 663-8007

Attorneys for Plaintiffs
PACIFIC SHORE STONES, LLC, PACIFIC SHORE STONES BAKERSFIELD, LLC, and PACIFIC SHORE HOLDING, INC.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

PACIFIC SHORE STONES, LLC; PACIFIC SHORE STONES BAKERSFIELD, LLC; and PACIFIC SHORE HOLDING, INC,

Plaintiffs,

vs.

ALLIED PROPERTY & CASUALTY COMPANY; CHARTER OAK FIRE INSURANCE COMPANY; CONTINENTAL INSURANCE COMPANY; GREAT WEST CASUALTY COMPANY; HANOVER INSURANCE COMPANY; MASSACHUSETTS BAY INSURANCE COMPANY; THE TRAVELERS INDEMNITY COMPANY OF AMERICA; THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT; TRAVELERS PROPERTY & CASUALTY COMPANY OF AMERICA; VALLEY FORGE INSURANCE COMPANY; and DOES 1-20,

Defendants.

Case No. 2:25-cv-04370-MRA (MAAx)

**PLAINTIFFS PACIFIC SHORE STONES, LLC, PACIFIC SHORE STONES BAKERSFIELD, LLC, AND PACIFIC SHORE HOLDING, INC.'S OPPOSITION TO JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS [DKT. 63]**

Judge: Hon. Mónica Ramírez Almadani

Date: October 6, 2025
Time: 1:30 p.m.
Place: Courtroom 9B

# TABLE OF CONTENTS

**Pages**


I. INTRODUCTION .......... 1

II. SUMMARY OF RELEVANT ALLEGATIONS .......... 3

III. ARGUMENT .......... 6

A. PacShore Has Alleged A Plausible Claim For Coverage .......... 6

B. The Insurers Have Failed To Meet Their Burden .......... 7

1. The Insurers Have Failed To "Conclusively Establish" That Silica Is The *Sole* Alleged Cause Of *All* Alleged Injuries .......... 7

2. The Insurers Have Failed To "Conclusively Establish" That The Alleged Pollution Exclusions Eliminate All Potential Coverage .......... 10

3. The Insurers Have Not Met Their Burden Of Proving The Policies Were Issued With The Purported Exclusions .......... 13

4. The Latest Travelers Silica Exclusion Undercuts The Insurers' Arguments About The Supposed Breadth Of The Others .......... 14

5. This Court Should Deny The Motions Filed By The Insurers That Admit Their Policies Have No Silica Exclusions .......... 15

IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*State of California v. Allstate Ins. Co.*,
45 Cal.4th 1008 (2009) ........ 1, 2, 9, 12

*American Zurich Insurance Co. v. James N. Gray Co.*,
No. SACV131966, 2014 WL 11430928 (C.D. Cal. July 25, 2014) ........ 11

*Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*,
45 Cal.App.4th 1 (1996) ........ 1, 2, 8

*Clark v. Eddie Bauer LLC*,
30 F.4th 1151 (9th Cir. 2022) ........ 11

*Dart Indus., Inc. v. Commercial Union Ins. Co.*,
28 Cal.4th 1059 (2002) ........ 2, 13

*Fluor Corp v. Superior Court*,
61 Cal.4th 1175 (2015) ........ 12

*Garamendi v. Golden Eagle Ins. Co.*,
127 Cal.App.4th 480 (2005) ........ 12

*Guided Discoveries, Inc. v. New Hampshire Ins. Co.*,
No. 8:22-cv-01889, 2025 WL 211973 (C.D. Cal. Jan. 9, 2025) ........ 2, 13

*Health Net, Inc. v. RLI Ins. Co.*,
206 Cal.App.4th 232 (2012) ........ 7, 9

*Horace Mann Ins. Co. v. Barbara B.*,
4 Cal.4th 1076 (1993) ........ 7, 8, 9, 11

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 6, 7, 10, 14

*Legarra v. Federated Mut. Ins. Co.*,
35 Cal. App. 4th 1472 (1995) ........ 11

*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Const. Co.*,
5 Cal. 5th 216 (2018) ........ 7, 11

*MacKinnon v. Truck Ins. Exch.*,
31 Cal.4th 635 (2003) .......... 2, 7, 11, 12, 15

*Marder v. Lopez*,
450 F.3d 445 (2006) .......... 14

*Montrose Chem. Corp. v. Sup. Ct.*,
6 Cal.4th 287 (1993) .......... 2, 7, 11

*National Council of La Raza v. Cegavske*,
800 F.3d 1032 (9th Cir. 2015) .......... 15

*National Foam, Inc. v. Zurich Am. Ins. Co.*,
768 F. Supp. 3d 1009 (N.D. Cal. 2025) .......... 11

*Pension Tr. Fund Operating Eng'rs v. Federal Ins. Co.*,
307 F.3d 944 (9th Cir. 2002) .......... 8

*Rsrv. Ins. Co. v. Pisciotta*
30 Cal.3d 800 (1982) .......... 15

*Safeco Ins. Co. of Am. v. Robert S.*,
26 Cal.4th 758 (2001) .......... 3, 15

*SR Int'l. Bus. Ins. v. World Trade Ctr. Props. LLC*,
222 F. Supp. 2d 385 (S.D.N.Y. 2002) .......... 13

*State Farm Mut. Auto Ins. Co. v. Partridge*,
10 Cal.3d 94 (1973) .......... 1, 9

*Travelers Prop. Cas. Co. of Am. v. Salesforce.com, Inc.*,
No. 21-15862, 2024 WL 4286968 (9th Cir. Sept. 25, 2024) .......... 10

*Villa Los Alamos Homeowners Ass'n v. State Farm Gen. Ins. Co.*,
198 Cal.App.4th 522 (2011) .......... 12

*Wesco Ins. Co. v. Brad Ingram Const.*,
No. 22-16584, 2024 WL 243344 (9th Cir. Jan. 23, 2024) .......... 6, 11

Rules and Regulations

Federal Rules of Civil Procedure,
56(c)(4) .................................................................................................... 3, 13

## I. INTRODUCTION

PacShore[1] hereby opposes the Insurers' ***joint*** motion for judgment on the pleadings.[2] It separately responds to the Insurers' five separate motions. All of the Insurers' motions should be denied in their entirety, including for the following reasons:

*First*, while PacShore disputes that its policies have silica exclusions, which alone is a reason for denying the Insurers' motions as discussed below, the Insurers are wrong that they bar coverage in any event. The underlying plaintiffs (Stoneworkers) indisputably allege their injuries were caused—at least in part—by exposure to *non-excluded* substances and conditions, including gases (volatile organic compounds), metals, carbonaceous material, fumes, mists, and spray. While the Insurers reluctantly admit that, Joint MJOP (ECF 63-1) at #56396:26-27, they contend the allegations of harm by such non-excluded agents are irrelevant because, they say, silica was a "substantial" factor in causing the Stoneworkers' diseases. *Id.* at #56396:15-16.

The Insurers are looking at this through the wrong lens. The question is not whether silica played a role in the Stoneworkers' diseases in some general sense. Rather, under bedrock California law, the proper question is whether there is *any potential* that non-excluded injurious agents such as VOCs and metals allegedly caused any of the alleged *injuries*, including at the cellular level. *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal.App.4th 1, 2 (1996) (injury is determined at the cellular level).

It is not enough for the Insurers to argue that the alleged injuries were *also* caused by an allegedly excluded substance. *State of California v. Allstate Ins. Co.*, 45 Cal.4th 1008, 1032 (2009) (coverage is available *whenever* a covered risk causes injury, *i.e.*, even if an excluded risk is a concurrent cause of the same injury); *see also State Farm Mut. Auto*

---

[1] This refers to Plaintiffs Pacific Shore Stones LLC, Pacific Shore Stones Bakersfield, LLC and Pacific Shore Holding, Inc.

[2] This opposition aims to avoid duplicating arguments made in the two similar cases also scheduled for hearing on October 6, 2025, involving Francini and Surface Warehouse.

*Ins. Co. v. Partridge*, 10 Cal.3d 94, 105 (1973) ("coverage is available whenever an insured risk constitutes a proximate cause of an accident, even if an excluded risk is a concurrent proximate cause").[3] There plainly is such a potential for injury caused by agents other than silica, and the Insurers have not "conclusively established" otherwise. *Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal.4th 287, 299 (1993). Accordingly, the Insurers must continue defending PacShore, and their motions should be denied.

*Second*, the Insurers are wrong about the alleged pollution exclusions. Pollution exclusions bar coverage only when the releases are from the insured's *own* premises or operations, and *then* only for "traditional environmental pollution." *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 642 (2003). They do not apply when, as here, a downstream worker with no connection to the insured is injured by the "negligent use or handling of toxic substances that occur[s] in the normal course of business." *Id.*; *see also id.* at 654 (pollution exclusion does not bar coverage for death caused by exposure to pesticide that a worker sprayed around a house). The Insurers have come nowhere close to "conclusively" establishing that *all* of the alleged injuries took place under circumstances that trigger pollution exclusions. Their arguments therefore should be rejected.

*Third*, the Insurers have not met their burden of proving the existence and terms of the alleged exclusions they say bar coverage, *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1072 (2002) (insurer bears burden of proving existence and terms of exclusions allegedly in policies); *see also Guided Discoveries, Inc. v. New Hampshire Ins. Co.*, No. 8:22-cv-01889, 2025 WL 211973, *4 (C.D. Cal. Jan. 9, 2025) (applying *Dart*), and cannot meet that burden at the pleadings stage, much less when relying on self-generated, unauthenticated documents attached to declarations that are inadmissible

[3] PacShore notes that it is aware of this Court's prior decision in the *Francini* case. Among others, the arguments under *Armstrong*, *Partridge* and *State of California* were not presented to the Court in connection with that decision. Because of that, and because PacShore had no opportunity to be heard prior to that time, PacShore respectfully requests that this Court consider the questions presented anew.

under Fed. R. Civ. Proc. 56(c)(4). Their motions should be denied for this reason, too.

*Fourth*, of the multiple iterations of silica exclusions the Insurers contend are present in PacShore's policies, only one variant bars coverage for "products . . . containing silica." While even that broader variant does not eliminate coverage for all of the Stoneworker Cases (as plaintiffs allege injury by products containing *no silica* at all, as discussed below), its mere existence belies the Insurers' arguments about the supposed breadth of the other versions of purported silica exclusions—had the Insurers intended for those other, narrower versions to bar coverage for all injuries caused by products containing silica, they could and should have said so. Having not done that, the Insurers cannot ask this Court to interpret their policies as though they did. *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal.4th 758, 764 (2001) (a "fundamental" rule of contract interpretation is that a court cannot insert limiting language that the insurer omitted).

*Fifth*, unlike the insurance policies before this Court in *Francini* and *Surface Warehouse*, three of the moving insurers admit that they issued policies *without* any form of exclusion for silica. Those Insurers nevertheless seek dismissal based upon alleged pollution exclusions in their policies. However, since the pollution exclusion does not bar coverage, as discussed, their motions should be denied even if this Court rules in favor of the other Insurers on the alleged silica exclusions (which it should not).

This Court should therefore deny the Insurers' motions.

## II. <u>SUMMARY OF RELEVANT ALLEGATIONS</u>

PacShore is being sued for "bodily injuries allegedly . . . caused by alleged exposure to harmful substances allegedly present in stone products allegedly distributed" by PacShore. PacShore Complaint (ECF 1-2) at ##23-24. Contrary to the Insurers' arguments, PacShore's alleged liability is not limited to "silicosis," not all allegedly injurious products contain silica, and the Stoneworkers do not allege injuries caused *solely* by "silica" and "silica-related dust." Their actual allegations include:

Allegations of injury other than "silicosis."[4] The Stoneworkers allege that exposure to non-silica substances caused "lung disease characterized by *pulmonary nodules*, silicosis, *pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage*." PacShore Complaint (ECF 1-2) at #24 (emphasis added); *see also Quiroz* Complaint (ECF 64-1) at #56935 (alleging that exposure to PacShore's products allegedly caused "metals and other toxins" to "enter[] [Mr. Quiroz's] body and cause[] [him] to suffer from specific illnesses, to wit, silicosis, pulmonary fibrosis, and related medical conditions."); *id.* at #56518 (exposure to metals "cause[s] an immunologic lung disease called hypersensitivity pneumonitis . . . that also causes pulmonary fibrosis").

Allegations of injury by low or no silica products. The Stoneworkers allege injuries caused by products comprised in significant part of constituents *other than silica*, including Corian (comprised of aluminum trihydrate and resin; no silica); marble, limestone, and travertine (calcium carbonate; less than 5% silica), dolomite (calcium magnesium carbonate; less than 5% silica), and Dekton, Neolith, Maxfine, and PacShore Tech (silica as low as 9%). *Quiroz* Complaint (ECF 64-1) at #56752 (Corian solid surface does not have crystalline silica); #56517 (marble has 3% to 5% silica); #56704 (Dekton is less than 11% silica); #56896 (Neolith is less than 9% silica).

Allegations of injury by non-excluded substances and conditions. These include:

*VOC Vapors*: The Stoneworkers allege that "[f]abricating artificial stone products . . . produces volatile organic compounds (VOCs)," including "styrene . . . phthalic anhydride, benzene, ethylbenzene, and toluene." ECF 64-1 at #56518; *see also* PacShore Complaint (ECF 1-2) at ##23-24. These VOCs allegedly "cause various pulmonary effects including asthma, bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis." ECF 64-1 at #56518. These VOC vapors are allegedly present in

[4] What plaintiffs describe as "silicosis" is not necessarily a silica injury. Mr. Quiroz alleges, for example, that "[e]ach toxin . . . was a substantial factor in bringing about, prolonging, and aggravating [his] silicosis." *Quiroz* Complaint (ECF 64-1) at #56938.

"emissions," not dust. *Id.* at #56762 ("VOCs in the emissions"); #56755 (distinguishing between "dust" and "vapors"); #56853 ("particulate filter respirator provides no protection for toxic vapors"). Apart from existing in a different phase (gas versus solid), VOCs are chemically distinct from silica, which is an inorganic compound comprised of silicon and oxygen.[5] VOCs are therefore not "silica," and not "silica-related dust." *Id.*

*Metals*. The Stoneworkers allege that they were exposed to "toxic . . . metals," *Quiroz* Complaint (ECF 64-1) at #56518, such as "aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, [and] vanadium[,]" PacShore Complaint (ECF 1-2) at #23-24. These metals are allegedly "extremely toxic to the human lungs and are known to cause pulmonary fibrosis and other lung diseases, especially beryllium, which has long been known to cause a deadly fibrotic lung disease from trivial, transitory exposures of a mere few days or weeks." *Quiroz* Complaint (ECF 64-1) at # 56781; *see also id.* at #56518 (metals cause pulmonary fibrosis) ##56753-56757, 56759, 56762-56766 (injuries caused by aluminum trihydrate in Corian). Metals are not "silica," and not "silica-related dust." *Id.*

*Resins*. The Stoneworkers allege exposure to resins, including "polyester resin binder made of styrene monomer and anhydrides." *Id.* at #56550. Such resins are made by mixing "acids, alcohols, styrene, and peroxide," *id.* at #56551, and comprise up to 15% of artificial stone products, *id.* at #56617. The process of cutting, grinding and polishing engineered stone products allegedly causes these resins to emit both VOCs, as discussed, and carbonaceous particulate matter, *id.* at #56700 (referring to "the toxicological properties of the resin . . . that are produced during fabrication processes as particles."). These organic constituents are not "silica," and not "silica-related dust." *Id.*

*Fumes*. Apart from metal particulate, the Stoneworkers also allege lung injuries

---

[5] *See* https://iaqscience.lbl.gov/introduction-vocs (discussing VOCs); https://wwwn.cdc.gov/TSP/substances/ToxSubstance.aspx?toxid=290 (discussing silica) (last checked September 2, 2025)

caused by exposure to metal fumes. *Id.* at #56894 (fabrication process "necessarily involves . . . generating . . . fumes"); *Id.* at #56700 (distinguishing between "particles" and "metal fumes"); #56823 (alleging that warnings about not breathing "fumes" are inadequate). Metal fumes are not "silica," and not "silica-related dust." *Id.*

*Mists and spray*. Apart from the non-dust transport mechanisms already discussed (vapors, fumes and particulate matter), the Stoneworkers also allege that "mists" and "spray" generated during wet processing methods act as a vehicle for transporting the allegedly injurious constituents of stone products into workers' lungs. *See, e.g.,* ECF 64-1 at ##56557, 56565, 56582, 56637, 56638, 56639, 56660, 56667, and 56697 (generally alleging that using a "wet" processing does not prevent lung injury); *see also id. at* ##56760, 56823, 56851 (addressing risks presented by breathing "mist" and "spray").

## III. <u>ARGUMENT</u>

### A. <u>PacShore Has Alleged A Plausible Claim For Coverage</u>

When faced with a motion for judgment on the pleadings, a plaintiff need only show that the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). The primary question before the Court is therefore simple: Has PacShore alleged "sufficient factual matter" to make "plausible" its claim that the Insurers have a duty to defend the Stoneworker Cases? The answer is "yes."

As PacShore has alleged, it faces liability in 100+ cases for alleged pulmonary fibrosis and other bodily injury allegedly caused by the workers' exposure to, *inter alia*, allegedly injurious gases, metals, fumes, mists, and sprays. These allegations fall squarely within the Insurers' promise to protect PacShore from lawsuits alleging "bodily injury," PacShore Complaint [ECF 1-2] at 29:19-26, which is a promise that must be "interpreted broadly so as to afford the greatest possible protection" to PacShore, *Wesco Ins. Co. v. Brad Ingram Const.*, No. 22-16584, 2024 WL 243344, *1 (9th Cir. Jan. 23, 2024) (citations and quotations omitted). PacShore has thus satisfied its burden of pleading facts that make "plausible," *Khoja*, 899 F.3d at 1008, its claim that there is a

"potential for coverage" and that there exists a duty to defend, *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Const. Co.*, 5 Cal. 5th 216, 222 (2018).

Since PacShore has met its pleading burden, the Insurers' motions should be denied unless they prove, under the facts alleged, when accepted as true, and with all inferences drawn in favor of PacShore, *Khoja*, 899 F.3d at 1012, that there is *no* "potential for coverage," *Ledesma*, 5 Cal. 5th at 222, in *any* of the 100+ lawsuits brought against PacShore. The Insurers do not come close to meeting their burden.

### B. <u>The Insurers Have Failed To Meet Their Burden</u>

To avoid their duty to defend, the Insurers must "conclusively establish," *Montrose*, 6 Cal.4th at 299, by reference to undisputed facts, *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1085 (1993), that there is ***no*** "potential for coverage" and thus ***no*** duty to defend, *Ledesma*, 5 Cal.5th at 222. This, in turn, requires the Insurers to prove that the exclusions allegedly in their policies bar coverage both "specifically," *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 648 (2003), and "completely," *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal.App.4th 232, 263 (2012).

#### 1. <u>The Insurers Have Failed To "Conclusively Establish" That Silica Is The *Sole* Alleged Cause Of *All* Alleged Injuries</u>

The Insurers have failed to "conclusively establish" that 100% of the Stoneworkers' alleged lung injuries were caused solely by allegedly excluded silica.

*First*, the Insurers "cherry pick" allegations from the underlying complaints to create the false impression that *all* of PacShore's products have high silica content, Joint MJOP (ECF 63-1) at #56391:12-18, that plaintiffs *only* allege injuries caused by silica, *id.* at ##56391:12-56392:24, and that "silicosis" is the only injury alleged, *id.* at 56391. Not so. As outlined above, allegedly injurious products have low or no silica content, and there are numerous allegations of injury other than "silicosis" caused by substances other than silica. It does not matter how many times the *Quiroz* complaint mentions "silica" and "silicosis," Joint MJOP (ECF 63-1) at #56397 fn. 4, and the Insurers are wrong that the supposed "crux" of the underlying allegations has any relevance here,

Joint MJOP (ECF 63-1) at 56393:7—the California Supreme Court has made clear that it is irrelevant "whether noncovered acts predominate in the third party's action." *Horace Mann Ins. Co.*, 4 Cal.4th at 1084. The *only* relevant question is, instead, "whether there is *any* potential for liability [covered] under the policy." *Id.* (emphasis in original). There plainly is. Indeed, while there are many allegations of potentially covered liability, as discussed, even one such allegation would require that the Insurers' motions be denied, as even "remote facts buried within causes of action . . . are sufficient to invoke the defense duty." *Pension Tr. Fund Operating Eng'rs v. Federal Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002); *see also id.* (duty to defend ***does not turn*** on "whether facts supporting a covered claim predominate or generate the claim"). The Insurers' motions should therefore be denied for that reason alone.

*Second*, the Insurers disregard the plain language of the policies and California law by focusing on underlying allegations that the Stoneworkers are suffering from "silicosis," *i.e.*, a diagnosed disease. ECF 63-1 at #56396:15-22. Given that "bodily injury" is defined to include "bodily injury," "sickness" *and* "disease," PacShore Complaint (ECF 1-2) at #29:19-26, the Insurers must "conclusively establish" that there is no *potential* that any "one of [those] three distinct conditions-bodily injury, sickness, or disease"-was caused by a non-excluded substance. *Armstrong World Indus., Inc.,* 45 Cal.App.4th at 2, 43 ("disease" refers to the diagnosed condition; "sickness" refers to the symptomatic manifestations of disease; "bodily injury" refers to the potentially sub-clinical or sub-diagnostic harmful changes to the body structure at the cellular level).

Here, the Insurers have failed to meet their burden of conclusively proving that *none* of the 100+ workers suing PacShore potentially suffered *any* sub-clinical or sub-diagnostic harmful changes to their lungs caused by exposure to VOCs, metals and other non-excluded injurious substances. Indeed, whether that type of "bodily injury" exists and what caused it are uniquely fact intensive inquiries that require extensive medical evidence. *See, e.g., id.* at 45-48 (discussing medical evidence related to the

"physiological processes associated with the inhalation of asbestos").[6] The Insurers have come nowhere close to meeting their burden of proving that there is *no* potential for "bodily injury" caused by non-excluded injurious agents. This, too, requires denial.

*Third*, the Insurers cannot meet their burden by pointing to allegations that an allegedly excluded cause (silica) was a "substantial" factor in causing the workers' injuries. Where, as here, a potentially covered cause (such as VOCs or metals) is alleged to be a "substantial" cause of an injury, *Quiroz* Complaint (ECF 64-1) at #56938 (alleging that non-silica substances were a "substantial factor" in causing their "silicosis"), coverage *must be afforded even if* an allegedly excluded cause (silica) *also* was a substantial factor in causing the injury, *State of California*, 45 Cal.4th at 1032 ("liability coverage exists whenever an insured risk constitutes a proximate cause of an accident, even if an excluded risk is a concurrent proximate cause.") *quoting Partridge*, 10 Cal.3d at 105; *see also* Ins. Code §530.[7] The Insurers therefore could not escape their coverage obligations even if they could prove (which they haven't) that each individual lung cell allegedly injured by VOCs and metals was *also* injured by silica. Rather, they would have to prove that an excluded risk was the ***sole cause of all*** of the workers' alleged injuries. *Id.*; *see also Health Net, Inc.*, 206 Cal.App.4th at 263 (insurer bears burden of proving that exclusions "completely" bar coverage for *all* alleged injury).

*Fourth*, the Insurers are improperly arguing against the underlying allegations by

---

[6] These fact-intensive, disputed, expert-driven issues *must be resolved in the underlying cases*, not here, and certainly not at the pleadings stage. *Horace Mann Ins. Co.*, 4 Cal. 4th at 1085 (where facts relevant to duty to defend are in dispute in the underlying action, the insurer must defend until those disputed facts are resolved in the underlying action)

[7] PacShore anticipates that the Insurers will argue (for the first time) that there is a supposed requirement that the causes be "independent" of each other that PacShore allegedly has not met. If made, this argument is a *red herring*, including because the most recent decision Supreme Court (*State of California*) omits any mention of "independent" causes, the causes here are "independent," and any discussion of these issues would be premature at the duty to defend stage for the reasons mentioned.

contending that *only* "silica" or "silica-related dust" can cause "silicosis." Mr. Quiroz specifically alleged that "[e]ach toxin, including . . . metals . . . was a substantial factor in bringing about, prolonging, and aggravating [his] silicosis." Quiroz Complaint (ECF 64-1) at #56938. That allegation must be accepted as true under both federal procedural law, *Khoja*, 899 F.3d at 999 (defendants are not allowed to present their own "version of the facts" at the motion to dismiss stage), and California insurance law, *Travelers Prop. Cas. Co. of Am. v. Salesforce.com, Inc.*, No. 21-15862, 2024 WL 4286968, *3 (9th Cir. Sept. 25, 2024) (requiring insurer to defend when underlying claim, as stated, gave rise to a potential for liability covered under the policy). The Insurers cannot avoid their coverage obligations by arguing, as they do, that what plaintiffs describe as "silicosis" could only be caused by allegedly excluded "silica" and "silica-related dust."

For the foregoing reasons, this Court should deny the Insurers' motions.

**2. <u>The Insurers Have Failed To "Conclusively Establish" That The Alleged Pollution Exclusions Eliminate All Potential Coverage</u>**

Given the extensive briefing on the pollution exclusions in the other cases, PacShore joins the arguments made by Surface Warehouse in Case 2:25-cv-03895-MRA-MAA (ECF 26 at ##55782:10 to 55790:8), which in summary form are:

<u>The Insurers have failed to "conclusively establish" that the pre-conditions to the alleged pollution conditions have been satisfied, *i.e.*, that each and every Stoneworker alleges injury at PacShore's "premises" or caused by a PacShore "contractor or subcontractor."</u>[8] Each of the Insurers' alleged pollution exclusions has locational or operational pre-conditions that the Insurers must prove have been met *before* the question

---

[8] *See, e.g.,* ECF 67-2 at 110026-110027 (for exclusion to apply, the "discharge, dispersal, seepage, migration, release or escape of 'pollutants'" must take place (i) "[a]t or from premises, site or location which is or was at an time owned or occupied by, or rented or loaned to, any insured;" or (ii) [a]t or from premises, site or location on which any insured or any [of its] contractors or subcontractors [are] working; these are subject to further exceptions as discussed in separate briefs).

of whether the Stoneworker Cases are for "traditional environmental pollution" become relevant. *See, e.g., Legarra v. Federated Mut. Ins. Co.*, 35 Cal. App. 4th 1472, 1477, 1480-81 (1995) (locational requirements require that the "dispersal of pollution [be] 'at or from' the insured's property."); *see also MacKinnon*, 31 Cal.4th at 642 (after locational requirements are met, insurer must prove that lawsuit is for "traditional environmental pollution"). Accordingly, even if the Stoneworker Cases could be considered "traditional environmental pollution" cases (they cannot), the Insurers have failed to meet their burden of proving there is no duty to defend, as they have failed to show that *each and every* alleged injury took place on PacShore's "premises" or during operations by its "contractors or subcontractors." *See, e.g., Montrose Chem. Corp.*, 6 Cal.4th at 299; *Horace Mann Ins. Co.*, 4 Cal.4th at 1085; *Ledesma*, 5 Cal.5th at 222.

The Insurers have failed to "conclusively establish" that the Stoneworker Cases involve excluded "traditional environmental pollution," and not the covered "use or handling of toxic substances that occur[s] in the normal course of business." This Court "is bound by the decisions of the highest state court," *Clark v. Eddie Bauer LLC*, 30 F.4th 1151, 1154 (9th Cir. 2022), which in this case means *MacKinnon*. *See, e.g., Wesco Ins. Co.*, 2024 WL 243344, *2 (reversing district court's decision in favor of insurer, holding that a worker's "expos[ure] ... to clouds of toxic dust during the loading and unloading of his truck" is not excluded under *MacKinnon*); *National Foam, Inc. v. Zurich Am. Ins. Co.,* 768 F. Supp. 3d 1009, 1017 (N.D. Cal. 2025) (applying *MacKinnon*, finding that pollution exclusion did not apply because "plaintiffs allege that they were exposed to [chemicals] through their ordinary use of National Foam's products, not via general environmental pollution (i.e., a contaminated water supply)."); *see also American Zurich Insurance Co. v. James N. Gray Co.*, No. SACV131966, 2014 WL 11430928 (C.D. Cal. July 25, 2014) (applying *MacKinnon*, finding that a "reasonable layperson or policyholder wouldn't necessarily think of the release of 'toxins, including silica and dust' in the demolition business as traditional pollution"). The Insurers do not even argue, much less "conclusively establish," that *all* of the workers' alleged injuries were

caused under conditions *other* than the "normal course of business."

*Villa Los Alamos* and *Garamendi* are inapposite. *Villa Los Alamos Homeowners Ass'n v. State Farm Gen. Ins. Co.*, 198 Cal.App.4th 522 (2011) and *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal.App.4th 480 (2005) are readily distinguishable. Unlike the micro releases of VOCs generated by cutting countertops in "small shops," *Quiroz* Complaint (ECF 64-1) at #56551, (i) *Villa Los Alamos* involved asbestos fibers that were dispersed throughout a large building, out the doors, and down the street, *Villa Los Alamos*, 198 Cal.App.4th at 540; and (ii) *Garamendi* involved industrial sandblasting that spread silica over what the court described as a "very large area" and "a large distance." *Garamendi*, 127 Cal.App.4th at 483; *see also id.* at 486 ("widespread dissemination").

*Villa Los Alamos* and *Garamendi* are also distinguishable because they arose in entirely different contexts. In *Villa Los Alamos*, a homeowner association sought coverage under a first party property policy for damage to its own property. *Id.* at 533. This stands in sharp contrast to the policies here, which are liability policies; PacShore is thus not seeking first party coverage to repair its own property, but is instead acting as "a conduit for transferring the insurance proceeds from the liability insurer[s] to the [allegedly injured] third part[ies]." *Fluor Corp v. Superior Court*, 61 Cal.4th 1175, 1192 n.15 (2015). Since this implicates a different set of considerations than a first party claim, courts generally find liability coverage exists unless the insurer proves coverage is "specifically excluded" by "clear and unmistakable" policy language, *MacKinnon*, 31 Cal.4th at 648; *see also State of California*, 45 Cal.4th at 1031 (drawing distinction between first party and liability coverage, ruling that "right to coverage in the third party liability insurance context draws on traditional tort concepts of fault, proximate cause and duty"). And, for its part, *Garamendi* is effectively an administrative law case, not a true insurance coverage case, as the court there was reviewing the Insurance Commissioner's rejection of a claim in a liquidation proceeding under an abuse of discretion standard. *Garamendi*, 127 Cal.App.4th at 485-486. These cases are inapposite.

### 3. <u>The Insurers Have Not Met Their Burden Of Proving The Policies Were Issued With The Purported Exclusions</u>

In many respects this is a "lost policy" case. *See, e.g.,* PacShore Complaint (ECF 1-2) at ##36, 38-39, 40-41 (referencing document disputes, missing policy documents and purported exclusions). These disputes can be fact intensive, and may require examining the application, quotation, binder and other contemporaneous extrinsic evidence to determine the specific terms of the policies to which the parties actually agreed. *See, e.g., Guided Discoveries, Inc.*, 2025 WL 211973, *2-4 (discussing evidence of policies); *see also SR Int'l. Bus. Ins. v. World Trade Ctr. Props. LLC*, 222 F. Supp. 2d 385, 390-391 (S.D.N.Y. 2002) (considering "extrinsic evidence of the circumstances surrounding the negotiation and drafting of the agreement as well as correspondence between the parties in order to ascertain the terms of the parties' complete agreement").

Given these disputes, PacShore alleged, on information and belief, the policy terms as to which it bears the burden of proof under California law. PacShore Complaint (ECF 1-2) at ##29-34; *see also Dart*, 28 Cal.4th at 1072 (insured bears the burden of proving that it was insured and the substance of the coverage grant and any other provision essential to its affirmative coverage claim); *see also Guided Discoveries, Inc.*, 2025 WL 211973, *4 (applying *Dart*). The Insurers, in turn, bear the burden of proving the existence and "substance" of any "provision that functions to defeat the insured's claim," such as the exclusions they contend apply here. *Dart*, 28 Cal.4th at 1072.

Attempting to circumvent their burden, the Insurers proffered with their motions policy documents that, they say, are *the* insurance policies they issued to PacShore. But the declarations to which the policies are attached are plainly deficient under *Fed. R. Civ. P.* 56(c)(4) (declarations must be based upon personal knowledge, among other requirements), including because they have no foundation, no support for any personal knowledge, no details about where the purported policy documents were found, no corroborating documents such as quotations or binders. *See, e.g.*, ECF 68-1 at 111055:4-

6 (hearsay that someone *other than the declarant* "has limited knowledge or no personal knowledge" but "believes" the copies are authentic).

If the Insurers cannot authenticate their own documents with declarations that would pass muster at the summary judgment stage, they cannot get around that via the "incorporation" doctrine. *Marder v. Lopez*, 450 F.3d 445, 449 (2006) (incorporation permitted only when, *inter alia*, "no party questions the authenticity" of the documents attached); *see also Khoja*, 899 F.3d at 1002-1008 (district court abused discretion for admitting a range of documents under the incorporation doctrine). This Court should therefore decline to consider the policy documents and deny the Insurers' motions.

### 4. The Latest Travelers Silica Exclusion Undercuts The Insurers' Arguments About The Supposed Breadth Of The Others

The different variations of the purported silica exclusions are as follows:

| No. | Insurer | Alleged Silica Exclusion |
|---|---|---|
| 1 | Continental; Valley Forge | ". . . arising, in whole or in part, out of the . . . respiration or ingestion at any time of **silica**." |
| 2 | Hanover; Mass. Bay; Great West | ". . . arising, in whole or in part, out of the . . . inhalation of, or ingestion of, 'silica' or 'silica-related dust.'" |
| 3 | Travelers Ind. Co. of Am. | ". . . arising out of or in any way related to . . . exposure to, or inhalation or respiration of silica."[9] |
| 4 | Travelers Prop. Cas. Co. of Am. | ". . . arising out of or in any way related to . . . exposure to, or inhalation or respiration of silica or products or substances containing silica." |

Version No. 4 is much broader than the others, as it bars coverage for injury caused by "exposure to . . . products . . . containing silica." But it is still not broad enough to warrant dismissal, as there are allegations of injury caused by products that do not contain silica. *See, e.g.,* Quiroz Complaint (ECF 64-1) ##56752-56757, 56759, 56762-56766. All of the other versions of the alleged silica exclusions are, however, limited to

[9] Travelers quoted this as the operative language in a letter dated December 30, 2024. It now contends that these policies have different, broader language, but there is no admissible evidence of that. *See* §III.B.3, *supra*.

injury caused *solely* by silica itself (whether directly or in dust), which are insufficiently broad to exclude coverage for the Stoneworker Cases for the reasons already discussed. Had the other Insurers intended to entirely bar coverage for any injury involving "products . . . containing silica," as they now seem to say, they had the burden of expressing that intent through language that is "clear and unmistakable." *MacKinnon*, 31 Cal.4th at 648. Having failed to do that, it is too late for them to ask this Court to construe their policies as though they had. *Safeco Ins. Co. of Am.*, 26 Cal.4th at 764 ("we cannot read into the policy what [the insurer] has omitted") (citations omitted); *see also Rsrv. Ins. Co. v. Pisciotta* 30 Cal.3d 800, 810, n.2 (1982) (rejecting insurer's argument when it "could easily have clarified the [allegedly] intended scope" of its exclusion). The Insurers' motions should be denied for this reason, too.

#### 5. <u>This Court Should Deny The Motions Filed By The Insurers That Admit Their Policies Have No Silica Exclusions</u>

Allied, Charter Oak and Travelers-Connecticut all admit that their policies have no form of silica exclusions. Their motions should therefore be denied even if this Court finds that the other Insurers have met their burden on the purported silica exclusions.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny the Insurers' motions. If, however, the Court finds dismissal is appropriate, PacShore should be provided leave to amend. *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (plaintiff should be afforded "at least one chance to amend").

Dated: September 8, 2025 PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Jeffrey A. Kiburtz*
Jeffrey A. Kiburtz

Attorneys for Plaintiffs
PACIFIC SHORE STONES, LLC, PACIFIC SHORE STONES BAKERSFIELD, LLC, and PACIFIC SHORE HOLDING, INC.

**CERTIFICATE OF WORD COUNT**

**L.R. 11-6.2**

The undersigned, counsel of record for Plaintiffs, certifies this brief contains 5,999 words, including footnotes, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order.

Dated: September 8, 2025

*/s/ Jeffrey A. Kiburtz*
JEFFREY A. KIBURTZ