UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

<table>
<tr><td>Melissa H. Kunig</td><td>None Present</td></tr>
<tr><td>Deputy Clerk</td><td>Court Reporter</td></tr>
<tr><td>Attorneys Present for Plaintiffs:</td><td>Attorneys Present for Defendants:</td></tr>
<tr><td>None Present</td><td>None Present</td></tr>
</table>

**Proceedings:**       **(IN CHAMBERS) ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [63]**

Before the Court is Defendants' Motion for Judgment on the Pleadings. ECF 63. The Court read and considered the moving, opposing, and reply papers, and held a hearing on the Motion on November 24, 2025. For the reasons stated herein, the Court **DENIES** the Motion.

## I.     BACKGROUND

This is an insurance coverage dispute arising out of personal injury claims brought by stoneworkers against various manufacturers and distributors of artificial stone products. Plaintiffs Pacific Shore Stones, LLC, Pacific Shore Stones Bakersfield, LLC, and Pacific Shore Holdings, Inc. (collectively, "Plaintiffs" or "Pacific Shore") filed this action for declaratory relief against Allied Property & Casualty Company ("Allied"), Charter Oak Fire Insurance Company ("Charter Oak"), Great West Casualty Company ("Great West"), Hanover Insurance Company, Massachusetts Bay Insurance Company,[1] Travelers Indemnity Company of America ("Travelers-A"), Travelers Indemnity Company of Connecticut ("Travelers-C"), Travelers Property Casualty Company of America ("Travelers Property"),[2] Continental Insurance Company, and Valley Forge Insurance Company[3] (collectively, "Insurers" or "Defendants").

Pacific Shore has been sued in more than 130 underlying tort lawsuits in California state courts (the "Underlying Actions"). In the Underlying Actions, the plaintiffs (the "Underlying Plaintiffs") allege that Pacific Shore's product contained hazardous substances including

---

[1] Hanover Insurance Company and Massachusetts Bay Insurance Company are collectively referred to as "Hanover."
[2] Travelers-A, Travelers-C, and Travelers Property are collectively referred to as "Travelers."
[3] Continental Insurance Company and Valley Forge Insurance Company are collectively referred to as "CNA."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

respirable crystalline silica, as well as metals and volatile organic compounds, which caused injuries including silicosis and other medical conditions.  The thrust of the Insurers' instant Motion is that coverage under the insurance policies each Insurer issued to Pacific Shore is precluded by the "Silica Exclusions," and separately, by the "Pollution Exclusions" contained in the policies.

### A.    The Underlying Actions

One such Underlying Action was filed by Cesar Manuel Gonzalez Quiroz.[4]  Mr. Quiroz's complaint includes the following allegations relevant to the instant Motion:

- "All stone products contain crystalline silica in varying concentrations from the lowest concentration of about 3-5% in marble to about 93-95% in traditional artificial stone."  ECF 64-1 ¶ 93.

- The fabrication of stone products "produces large amounts of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic silicosis as well as lung cancer and various other silica-related diseases."  *Id.* ¶ 95.

- Fabrication workers "are not only exposed to high concentrations of respirable crystalline silica, but are also exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders."  *Id.* ¶ 96.

- "In addition to crystalline silica, pulmonary fibrosis (scarring of the lung tissue) is caused by many metals that are constituents of artificial stone, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium."  *Id.* ¶ 97.

- "Fabricating artificial stone products also produces volatile organic compounds (VOCs), the predominant species being styrene, but also including phthalic anhydride, benzene, ethylbenzene, and toluene.  Styrene and phthalic anhydride are respiratory irritants that cause various pulmonary effects including asthma,

---

[4] The Court takes judicial notice of the underlying complaints against Pacific Shore.  ECF 64.  Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Courts "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts."  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis."
*Id.* ¶ 98.

- "Throughout the course of his work" as a stone cutter, Mr. Quiroz "worked with inherently hazardous stone products manufactured, imported, supplied, distributed, contracted, and/or brokered, by [Pacific Shore].   [Mr. Quiroz] was thereby exposed to and inhaled stone dust containing silica and other toxins and carcinogens, as well as artificial stone dust containing respirable crystalline silica (including quartz and cristobalite), metals . . . and volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene) emitted from these products)."   *Id.* ¶ 111.

- "As a direct and proximate result of his exposure to silica, metals and other toxins within said stone products . . . [Mr. Quiroz] developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma)."   *Id.* ¶ 112.

- "At no time did [Mr. Quiroz] personally ascertain any ingredients or contaminants of the stone products to which he was exposed in the course of his work that caused his lung disease; [Mr. Quiroz] personally remains ignorant of the identity of those hazardous substances to which he was exposed at work that caused his lung disease."   *Id.* ¶ 119.

- "As a result of [Mr. Quiroz's] exposure to each of Defendants' stone products, silica, metals and other toxins entered [Mr. Quiroz's] body and caused Plaintiff to suffer from specific illnesses, to wit, silicosis and related medical conditions, as set forth in more detail herein."   *Id.* ¶ 1306.

- "Each of Defendants' stone products contained silica and toxic metals, that entered [Mr. Quiroz's] body and was a substantial factor in causing, prolonging, and aggravating his silicosis and his related and consequential injuries."   *Id.* ¶ 1307.

Both parties refer to Mr. Quiroz's complaint as representative of the Underlying Actions. ECF 63-1 at 12; ECF 74 at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

### B.    The Policies and Exclusions

Defendants are insurance companies that issued one or more primary or excess/umbrella commercial liability insurance policies to Pacific Shore or one of the other Plaintiffs between 2004 and the present ("the Policies").  ECF 1-2 ¶¶ 35-44.  Each policy issued by the Insurers contains a silica or silica-related dust exclusion ("Silica Exclusion") and/or a pollution exclusion ("Pollution Exclusion") and/or follow form to a policy with one or more of these exclusions.

For example, the Silica Exclusion in a commercial general liability policy issued by Hanover provides that insurance does not apply to:

"Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust."

ECF 70-2 at 195.  The Hanover policy defines silica as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds." *Id.* "Silica-related dust" is defined as "a mixture or combination of silica and other dust or particles." *Id.*

Many of the Policies also include a "Pollution Exclusion." For example, one policy issued to Pacific Shore by Allied provides that insurance does not apply to:

"Bodily injury" . . . arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured . . .

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, con tractor or subcontractor.

ECF 66-14 at 59–61.

### C.    Procedural History

Pacific Shore filed this action against the Insurers in Los Angeles Superior Court on April 11, 2025.  ECF 1 at 2.  Plaintiffs asserted eight causes of action: (1) Declaratory Relief (against Allied), (2) Declaratory Relief—Duty to Defend (against all Defendants), (3) Declaratory Relief—Duty to Consider Settlement Demands (against all Defendants), (4) Declaratory Relief—

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

Alleged Silica-Related Exclusions (against all Defendants), (5) Declaratory Relief—Alleged Pollutant or Contaminant Exclusions (against all Defendants), (6) Declaratory Relief—Allocation of Defense Costs Between Multiple Triggered Defendants (against all Defendants), (7) Declaratory Relief—Allocation of Settlements Between Multiple Triggered Defendants (against all Defendants), and (8) Declaratory Relief—Indemnity Obligations (against all Defendants).  *Id.* at 3.

Defendants filed a timely Notice of Removal on May 14, 2025, asserting diversity jurisdiction.  *Id.* at 4–6.  Defendants then filed answers to Plaintiffs' complaint.  ECF 15 (Hanover Answer); ECF 16 (Charter Oak and Travelers Answer); ECF 18 (Great West Answer); ECF 19 (CNA Answer).

On August 13, 2025, Defendants filed a joint Motion for Judgment on the Pleadings ("Motion").  ECF 63.  Each Defendant also filed a separate memorandum in support of the Motion, describing its specific policies and the exclusions therein.  ECF 65 (Allied Memorandum); ECF 67 (Charter Oak and Travelers Memorandum); ECF 68 (CNA Memorandum); ECF 69 (Great West Memorandum); ECF 70 (Hanover Memorandum).  Plaintiffs opposed the joint Motion and each Defendant's individual memorandum.

On May 14, 2025, Hanover filed a Notice of Related Case, indicating that this action concerns the same Underlying Actions and policy exclusions as those at issue in *Hanover American Insurance Co. et al. v. Francini, Inc.*, No. 2:23-cv-10047-MRA-MAA ("*Hanover*").  ECF 6.  This action was then transferred to the undersigned judge pursuant to General Order 24-04.  ECF 23.  Several additional coverage actions were filed by other insurance providers and stone companies concerning the same Underlying Actions and similar silica and pollution policy exclusions, each of which were also noticed as related to *Hanover* and transferred to the undersigned judge.  *Regent Insurance Company et al. v. Cambria Enterprises et al.*, No. 2:25-cv-04142-MRA-MAA (C.D. Cal. May 8, 2025); *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company et al.*, No. 2:25-cv-03895-MRA-MAA (C.D. Cal. May 1, 2025); *Regent Insurance Company et al. v. Stone Source LLC*, No. 2:25-cv-06702-MRA-MAA (C.D. Cal. July 22, 2025).  The insurers filed motions for judgment on the pleadings in every action, including the instant action, and four of the motions were heard on November 24, 2025.  ECF 92.

## II.    **LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Motions for judgment on the pleadings are "functionally identical to Rule 12(b)(6) motions."  *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)) (internal quotation marks omitted).  Therefore, "when ruling

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

on either type of motion 'courts must consider the complaint in its entirety, as well as other sources . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

On a motion for judgment on the pleadings, "[j]udgment is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *San Francisco Taxi Coal. v. City & Cnty. of San Francisco*, 979 F.3d 1220, 1223 (9th Cir. 2020). "A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). "Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368 (1969)).

## III.   DISCUSSION

### A.   Plaintiffs' Objections to the Policy Documents

The Insurers ask the Court to take judicial notice of the certified copies of their respective policies issued to Pacific Shore. ECF 64 at 2. Each Insurer submitted a declaration from a company employee, declaring that the attached certified policies are true and correct. ECF 66 (Keslinger Decl. in support of Allied Memorandum); ECF 67-1 (Erikson Decl. in support of Charter Oak and Travelers Memorandum); ECF 68-1 (Gende Decl. in support of CNA Memorandum); ECF 69-1 (Johnson Decl. in support of Great West Memorandum); ECF 70-1 (Lyons Decl. in support of Hanover Memorandum). The Insurers contend that these documents are judicially noticeable because Pacific Shore alleges the existence of the policies as well as the policy numbers but does not attach the policy documents themselves as exhibits to the complaint. *Id.* at 33–35.

In ruling on the Insurers' Motion for Judgment on the Pleadings, the Court may consider documents incorporated by reference into a complaint "if the plaintiff extensively refers to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003). The complaint refers to the specific policies issued by each Insurer by policy number and date of coverage. ECF 1-2 ¶¶ 35–46. The thrust of Plaintiffs' claims is that said policies provide coverage in the Underlying Actions. Thus, it is appropriate for the Court to take judicial notice of the policies which are incorporated by reference. *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n.1 (9th Cir. 2009) ("A court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint."). Moreover, considering these documents does not convert the Motion into a motion for summary judgment. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

(recognizing that in ruling on a Rule 12(c) motion, the court can consider documents incorporated into the complaint by reference).

Pacific Shore nevertheless argues that the Court may not consider the documents because there is a dispute about their authenticity. Pacific Shore argues that the declarations used to authenticate the documents are inadequate because they do not contain "details about where the purported policy documents were found, and there are no corroborating documents such as quotations or binders." ECF 75 at 5. Federal Rule 901(b)(1) provides that a witness with knowledge of a document can authenticate it by testifying that it is "what it is claimed to be." *United States v. Estrada-Eliverio*, 583 F.3d 669, 672 (9th Cir. 2009). "[Rule] 901 does not require personal knowledge of a document's creation, but rather only personal knowledge that a document was part of an official file." *Id.* at 673. Thus, a document is sufficiently authenticated if a declarant attests that the documents "where what [they were] claimed to be, namely, accurate copies of documents he personally knew were from" a file. *Id.*; *see also Burden v. Bar Louie Anaheim, Inc.*, No. SACV 15-0638 AG (E), 2016 WL 551993 (C.D. Cal. Feb. 10, 2016) (declaration stating that exhibits were "true and correct copies of the documentation," and that declarant is "duly authorized and qualified" to certify their authenticity was sufficient to authenticate the documents).

Here, each declaration used to authenticate Defendants' Policies states, at a minimum, that the declarant is familiar with claims and policies, and that the documents attached are true and correct certified copies of the Policies. ECF 66 ¶ 2 ("I am familiar with the claims and policies issued to [Plaintiffs]."); ECF 67-1 ¶ 1 ("My responsibilities involve overseeing the collection of insurance policies at issue in this action."); ECF 68-1 ¶ 4 ("I am familiar with and have personal knowledge of . . . the insurance policies issued by CNA to Pacific Shore."); ECF 69-1 ¶ 2 ("I make the following statement of my own personal knowledge, and/or based on the review of records and documents maintained by [Great West]."); ECF 70-1 ¶ 1 ("[M]y responsibilities include overseeing the certification of insurance policies."). The email submitted by Pacific Shore in which Pacific Shore's counsel expresses concern about the policies based on his "experience" is, at best, conjecture and insufficient to create a reasonable dispute as to the authenticity of the documents. ECF 80-1. .

The Court therefore **GRANTS** Defendants' request to take judicial notice of the Policy Documents.

**B.    Insurance Coverage Principles**

"A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993) (cleaned up). A "carrier must defend a suit which [p]otentially seeks damages within the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded," or in an action where damages arise from an injury that is ultimately determined to fall outside the scope of the policy or within an exclusion. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993); *see also Saylin v. California Ins. Guarantee Assn.*, 179 Cal. App. 3d 256, 263 (1986) ("[T]he duty [to defend] may exist even where coverage is in doubt and ultimately does not develop." (internal quotation marks omitted)).

The duty to defend is triggered by a "bare 'potential' or 'possibility' of coverage." *Montrose*, 6 Cal. 4th at 300. To prevail in an action seeking declaratory relief on the issue of the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." *Id.* "The duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002). "Thus, even where . . . the allegations in the underlying complaint are primarily focused on non-covered claims, the Court 'look[s] not to whether noncovered acts predominate in the third party's action, but rather to whether there is any potential for liability under the policy.'" *KM Strategic Mgmt., LLC v. Am. Cas. Co. of Reading PA*, 156 F. Supp. 3d 1154, 1168 (C.D. Cal. 2015) (quoting *Horace Mann*, 4 Cal. 4th at 1084).

"The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann*, 4 Cal. 4th at 1081. "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Id.* (citing *Gray*, 65 Cal. 2d at 276). Stated differently, "facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy." *Montrose*, 6 Cal. 4th at 296 (citing *Gray*, 65 Cal. 2d at 276). On the other hand, "the insured may not speculate about unpled third party claims to manufacture coverage." *Albert v. Mid-Century Ins. Co.*, 236 Cal. App. 4th 1281, 1290 (2015) (quotation marks omitted); *The Upper Deck Co. v. Fed. Ins. Co.*, 358 F.3d 608, 616 (9th Cir. 2004)). "The possibility of an amendment does not require the insurer to speculate about any conceivable claim that a plaintiff might bring against the insured or to spin out wild theories of recovery for every conceivable damage." *The Upper Deck Co.*, 358 F.3d at 616.

In a "mixed" action, in which some of the claims are at least potentially covered and the others are not, the insurer has a duty to defend the action in its entirety. *Buss v. Superior Ct.*, 16 Cal. 4th 35, 48 (1997).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

### C.   The Silica Exclusion

The Insurers argue they owe no duty to defend or indemnify Pacific Shore in the Underlying Actions because each Underlying Plaintiff alleges bodily injury arising at least in part out of the inhalation of silica or silica-related dust.   ECF 63-1 at 12.   Pacific Shore argues that "the proper question is whether there is *any potential* that the non-excluded injurious agents such as VOCs and metals allegedly caused any of the alleged *injuries*, including at the cellular level." ECF 74 at 6.   In other words, Pacific Shore argues that because there is a "potential for injury caused by agents other than silica," the Insurers may not rely on the Silica Exclusion to preclude coverage.   *Id.* at 7.

The Silica Exclusions generally bar from coverage any bodily injury "arising, in whole or in part" out of silica or silica-related dust.[5]   Thus, in considering the Insurers' Motion, the Court must consider whether there is a possibility that the Underlying Actions involve bodily injuries that do not "arise from" silica or silica-related dust.   The Court answers this question by looking at the Underlying Plaintiffs' allegations, as well as facts extrinsic to the complaints.   *See Montrose*, 6 Cal. 4th at 295; *Gray*, 65 Cal. 2d at 276.   If such a possibility exists, then the Insurers owe a duty to defend, regardless of whether the underlying injuries were predominantly, primarily, or substantially caused by silica or silica-related dust.   *See KM Strategic Mgmt.*, 156 F. Supp. 3d at 1168.

It is undisputed that the Underlying Plaintiffs allege that they were "not only exposed to high concentrations of respirable crystalline silica, but [were] also exposed to other toxic substances in artificial stone," including many metals and VOCs which can cause pulmonary fibrosis and other pulmonary effects.   ECF 64-1 ¶¶ 96–99.   Moreover, it appears undisputed that such metals or VOCs do not meet the Policies' definition of "silica," and that because VOCs are gases, they would not meet the Policies' definition of "silica-related dust."   ECF 74 at 10; *see, e.g.*, ECF 69-2 at 31 (defining silica-related dust as a "mixture or combination of silica and other *dust* or *particles*" (emphasis added)).   And finally, it is undisputed that the Underlying Plaintiffs allege these non-silica substances contributed to their injuries.   ECF 64-1 ¶ 1306 ("As a result of

---

[5] This language or materially similar language can be found in the policies issued by Great West, ECF 69-2 at 31, Hanover, ECF 70-2 at 195, and CNA, ECF 68-3 at 10.   The policy issued by Travelers Property contains a broader Silica Exclusion that applies to bodily injury "arising out of or in any way related to . . . silica or products or substances containing silica."   ECF 1-2 ¶ 43.   Pacific Shore does not seek coverage from Travelers Property but seeks declaratory relief against Travelers Property regarding allocation issues.   *Id.*; ECF 79 at 7.   Travelers-A argues that its policies also contain this broader language found in the Travelers Property policies.   ECF 67 at 5.   The Court discusses these policies separately *infra*, Section III.D.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

[Mr. Quiroz's] exposure to each of Defendants' stone products, silica, metals and other toxins entered [Mr. Quiroz's] body and caused [Mr. Quiroz] to suffer from specific illnesses."). In other words, there is no dispute that the Underlying Plaintiffs allege that they were exposed to toxic substances that are neither silica nor silica-related dust (and thus covered under the Policies) and that those substances contributed to their injuries.

The question remains, however, whether the Silica Exclusion bars coverage for those injuries where the Underlying Plaintiffs allege that silica and silica-related dust *also* contributed to those injuries. The Court concludes it does not.

Critically, each Underlying Plaintiff alleges that they "remain[] ignorant of the identity of those hazardous substances to which [they] were exposed at work that caused [their] lung disease." ECF 64-1 ¶ 119. The Underlying Plaintiffs allege that various toxic substances (generally speaking, silica, metals, and VOCs) can independently cause the lung injuries they suffer from, including lung disease and/or pulmonary fibrosis. *Id.* ¶¶ 96–97. But among these different substances, any individual Underlying Plaintiff does not know which precise substance caused their precise injuries. Given these allegations in the Underlying Actions, it is possible that toxic substances *other* than silica or silica-related dust were the sole cause of the pulmonary fibrosis or lung disease suffered by the Underlying Plaintiffs. In other words, the Underlying Actions present the possibility that the Underlying Plaintiffs' injuries were not caused by silica or silica-related dust at all—whether that possibility is remote or unlikely is irrelevant.

Ultimately, it is the Insurers' burden to show that the Silica Exclusion applies—*i.e.*, to show that the injuries alleged in the Underlying Actions *do* arise in whole or in part out of the alleged inhalation of silica or silica-related dust. *See ML Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal. App. 4th 137, 141 (2000) ("When it comes to exclusions, the insurer bears the burden of proving the exclusion applies."). Given the scientific and fact-intensive nature of the injuries alleged, the Insurers cannot meet this burden at the present stage.

The Court acknowledges that it reached a different conclusion in its prior order granting the insurers' motion for judgment on the pleadings in *Hanover*. The Court has revisited its decision in that case, and with the benefit of additional briefing and argument from counsel, the Court recognizes that its first order in *Hanover* characterized silica as the "primary" or "main" cause of the Underlying Plaintiffs' injuries. *See Hanover*, ECF 66 at 8. But whether silica "predominates" in the Underlying Actions' complaints is irrelevant to whether the Silica Exclusion precludes coverage. *See Horace Mann*, 4 Cal. 4th at 1084. The dispositive question as to the Insurers' Motion is whether there is a "bare 'potential' or 'possibility'" that the Underlying Plaintiffs' bodily injuries were caused by a non-excluded substance, and the Court concludes that there is.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

To be sure, silica "predominates" in the Underlying Actions in the sense that the exposures to and the injuries caused by non-excluded substances are uniformly alleged in combination with silica. For instance, Mr. Quiroz alleges that as a result of his exposure to Pacific Shore's stone products, "silica, metals *and* other toxins" entered his body and caused him to suffer from "silicosis, pulmonary fibrosis, and related medical conditions." ECF 64-1 ¶ 1306 (emphasis added). Mr. Quiroz also alleges that "[e]ach toxin, including silica *and* metals, that entered [Mr. Quiroz's] body was a substantial factor in bringing about . . . [Mr. Quiroz's] silicosis and his related consequential injuries." *Id.* ¶ 1325 (emphasis added). Reading these allegations in isolation, it would be plausible to conclude that silica contributed, at least in part, to each of the Underlying Plaintiffs' injuries, which would bring the injuries into the scope of the broadly phrased Silica Exclusion.

But upon closer examination of the Underlying Actions and the applicable law, the Court cannot ignore allegations appearing elsewhere in the complaint: that Mr. Quiroz developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and that at least some of those conditions can be independently caused by metals and VOCs. ECF 64-1 ¶¶ 96–97, 112. Such allegations, in tandem with the allegation that Mr. Quiroz is ignorant of the identity "of those hazardous substances . . . that caused his lung disease," "suggest a claim potentially covered by the [Policies]," and thus trigger a duty to defend. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005). To the extent that the allegations in the Underlying Actions contradict each other or create any ambiguity as to the cause of the Underlying Plaintiffs' injuries, any such ambiguity or doubt must be resolved in Pacific Shore's favor. *James River Ins. Co. v. SureFire, LLC*, No. 8:24-CV-01556-JVS-KES, 2025 WL 1287891, at *6 (C.D. Cal. Mar. 6, 2025) ("Any ambiguity in the complaint or doubt as to whether the facts give rise to a duty to defend must be resolved in favor of the insured." (citing *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1270 (9th Cir. 2010))).

Moreover, insofar as the Underlying Actions can be interpreted to allege that excluded and non-excluded causes *both* contributed to an Underlying Plaintiffs' injuries, such allegations would not eliminate the duty to defend, even under the broad language of the Silica Exclusion, pursuant to California's concurrent cause doctrine. In *State Farm Mutual Automobile Insurance Co. v. Partridge*, 10 Cal. 3d 94 (1973), the California Supreme Court held that where a "homeowner's policy excluded injuries 'arising out of the use of' an automobile, such exclusion does not preclude coverage when an accident results from the concurrence of a non-auto-related cause and an auto-related cause." *Id.* at 97. The Court further held that where a non-excluded "risk is a proximate cause of an injury, liability attaches to the insured, and coverage for such liability should naturally follow." *Id.* The Court went on to explain that "[c]overage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | | Date | March 31, 2026 |
|----------|------------------------|---|------|----------------|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | | |

*Partridge* therefore instructs that, because silica and non-silica substances are each alleged to be substantial factors in causing the Underlying Plaintiff's injuries, the Silica Exclusion does not defeat coverage. In a subsequent case, the California Supreme Court held that "tort law (substantial factor) causation is sufficient to create coverage *under a liability policy* when covered and excluded acts or events have concurred in causing injury or property damage." *California v. Allstate Ins. Co.*, 45 Cal. 4th 1008, 1036 (2009). In *Allstate*, the Court considered whether the insurer was liable for property damage, some of which was caused by covered, accidental pollutant discharges, and some of which was caused by excluded, nonaccidental pollutant discharges. *Id.* at 1030. The exclusion in *Allstate* included the same broad "arising out of" language appearing in the Silica Exclusion here. *Id.* at 1016. And the Court concluded that the fact "that an excluded cause of property damage[] also contributed to the contamination is insufficient to defeat *Partridge*'s holding that liability coverage exists 'whenever an insured risk constitutes a proximate cause of an accident, even if an excluded risk is a concurrent proximate cause.'" *Id.* at 1032 (quoting *Partridge*, 10 Cal. 3d at 105).

*Partridge* and *Allstate* together compel the conclusion that where two substances—one excluded and the other covered—are each alleged to be a substantial factor in causing the underlying plaintiff's injuries, the broad "arising out of" language in the exclusion cannot be applied to defeat coverage. A different judge in this district recently applied *Partridge* to a materially similar dispute to reach the same conclusion. *Sompo America Insurance Company v. LX Hausys America, Inc.*, No. CV 25-2832-JFW(MAAx), 2025 WL 4061607, at *4 (C.D. Cal. Dec. 22, 2025). The Court finds the reasoning in *Sompo* persuasive here and similarly concludes that the Insurers "cannot avoid [their] duty to defend where an insured risk and excluded risk are alleged to constitute concurrent proximate causes of the underlying plaintiffs' bodily injuries." *Id.*

Drawing all reasonable inferences in Pacific Shore's favor, as the Court must do in resolving the Insurers' Motion, the Court concludes that Pacific Shore has demonstrated the existence of a potential for coverage—*i.e.*, the existence of injuries in the Underlying Actions that would not fall within the scope of the Silica Exclusion.

**D.    Travelers Property and Travelers-A Silica Exclusion**

Unlike the Silica Exclusion discussed above, which bars injuries arising in whole or in part from silica or silica-related dust, the Silica Exclusions in the policies issued by Travelers-A and Travelers Property (the "Travelers Silica Exclusion") contain broader language which bars coverage for bodily injury:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

arising out of or in any way related to the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of silica or products or substances containing silica.

ECF 67-4 at 146 (Travelers-A policy); ECF 67-5 at 155 (Travelers Property policy).

The inclusion of the language "products . . . containing silica" is significant.   The narrower Silica Exclusions discussed above, which do not contain this language, concern the specific substance that caused the Underlying Plaintiffs' injuries, and because the Underlying Actions can be fairly read as alleging that non-silica substances were the partial or sole cause of those injuries, the Insurers cannot avoid a duty to defend based on those exclusions.   By contrast, the Travelers Silica Exclusion does not speak only to the substances that cause injuries, but rather to whether the injuries were caused by any product that merely contains silica.   The Underlying Plaintiffs allege that "[a]ll stone products contain crystalline silica in varying concentration." ECF 64-1 ¶ 93.   And the Underlying Plaintiffs further allege that exposure to all toxic substances, including both silica and non-silica toxins, was the result of their work with "inherently hazardous stone products."   *Id.* ¶ 111.   Put another way, although it is reasonable to infer that the Underlying Plaintiffs allege substances other than silica actually caused their injuries, the only fair reading of these allegations is that those injuries were all caused by *products* that, at the very least, contained silica.   A comparison of the Travelers Silica Exclusion and the Underlying Actions would therefore indicate that coverage is precluded under the broad language of the exclusion.

Pacific Shore appears to acknowledge the relative breadth of the Travelers Silica Exclusion when compared to the other Silica Exclusions.   ECF 79 at 7–8 (arguing that broader language "demonstrates that Travelers knows how to draft an exclusion" that excludes coverage from exposure to products containing silica); ECF 1-2 ¶ 43 (disclaiming coverage under Travelers Property policy containing broader exclusion).   Pacific Shores nevertheless argues that such exclusion does not bar coverage "[b]ecause there are allegations of injury caused by products containing *no silica* at all."   ECF 79 at 7 (citing ECF 64-1)).   In support of this argument, however, Pacific Shore points only to allegations raised against *other* defendants in the Underlying Actions.   But Plaintiffs cannot rely on these allegations made against other underlying defendants to identify injuries not arising out of the excluded risk.   *See McCarthy Bldg. Cos., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. CV0805686SVWPJWX, 2009 WL 10703130, at *3 (C.D. Cal. Feb. 11, 2009) ("Plaintiff provides no authority that would allow the Court to hold that Defendant has a duty to defend Plaintiff because the [underlying action] contains claims arising out of the actions of other parties.").

As to Travelers-A, Pacific Shore also argues that Travelers has made "inconsistent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

statements" on the specific language of the policies it issued.  ECF 79 at 6–7.  Having rejected Pacific Shores' challenges to the authenticity of the policy documents for the reasons explained above, the Court finds this argument unavailing.  Pacific Shore has not produced any contrary policy documents containing differing language, and Pacific Shore cannot speculate as to possible inconsistencies to defeat the motion.  *See Finley v. Transamerica Life Ins. Co.*, No. 15-CV-00678-WHO, 2015 WL 6871944, at *4 (N.D. Cal. Nov. 9, 2015) ("[A]bsent any evidence or even a plausible allegation that the actual terms of [the] policy were different from those stated in the . . . [authenticated] policy," party seeking coverage could not "provide any reasonable basis for now disregarding the [authenticated] policy or finding it insufficient to establish the relevant terms.").  And to the extent that Pacific Shores relies on language in a reservation of rights letter sent by Travelers-A that purportedly contradicts the language of the policy itself, that letter specifically states that "this correspondence is not intended to be, nor shall it be construed as, an exhaustive listing of policy terms, conditions, or exclusions."  ECF 80-2 at 5.  The Policy itself provides that its "terms can be amended or waived only by endorsement issued by [Travelers-A] and made a part of this policy."  ECF 67-3 at 8.  Thus, to the extent that the letter contained incomplete or contradictory language, it does not displace the terms of the exclusion itself.  *See Earl v. Life Ins. Co. of N. Am.*, 204 F. App'x 592, 594 (9th Cir. 2006) (holding insurer was not bound to incorrect definition of policy term contained in letters because "by the applicable policy's own terms, it could not be modified or amended by the waiver or mistake of an employee of the defendant insurance company").

Nevertheless, the Travelers Silica Exclusion must be read in the context of the Travelers policies in their entirety.  The policies issued by Travelers include an aggregate limit for "Products-Completed Operations," which provides insurance limits for "all 'bodily injury' . . . . arising out of 'your product,'" which is defined as "[a]ny . . . products . . . sold, handled, distributed or disposed of by [Pacific Shore].'"  ECF 67-2 at 112–13.  In other words, the Travelers policies contemplate that coverage up to an aggregate amount will be provided for injuries arising from Pacific Shore's products.  Pacific Shore is a distributor and manufacturer of stone products, ECF 1-2 ¶ 1, which, according to the Underlying Plaintiffs, *all* contain silica, ECF ECF 64-1 ¶ 93.  As a California state court considering the same Travelers Silica Exclusion explained, "if Plaintiff's products all contain silica, the coverage for bodily injury arising out of Plaintiff's products would seem to conflict with the silica exclusion interpreted broadly."  ECF 101-1 at 5.[6]

---

[6] Pacific Shore submitted a "Notice of Supplemental Authority," attaching a ruling issued by a judge of the Los Angeles Superior Court addressing the applicability of the Travelers Silica Exclusion.  In that decision, the trial court overruled the demurrer filed by the insurers, concluding that the applicability of the illusory coverage doctrine depended on facts outside the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

This apparent tension in the policy creates a potential ambiguity, and Pacific Shore has a reasonable expectation that "an insurer would not issue a policy providing no coverage or so severely limiting coverage as to render it illusory." *See Sec. Serv. Fed. Credit Union v. First Am. Title Co.*, No. CV 10-04824 SJO VBKX, 2012 WL 5954815, at *11 (C.D. Cal. Jan. 27, 2012). The Court cannot resolve this ambiguity or determine whether these exclusions render the policies illusory in the instant Motion, because those issues turn on facts outside the pleadings—for instance, facts concerning the types of products Pacific Shore obtained coverage for and whether all of those products contain silica are not properly before the Court.

For these reasons, the Court concludes that at the present stage, Pacific Shore has demonstrated there is a potential for coverage under the Travelers Exclusion. *See Braden Partners, LP v. Twin City Fire Ins. Co.*, No. 14–CV–01689–JST, 2014 WL 7739396 (N.D. Cal. Oct. 17, 2014) (denying insurer's motion to dismiss claim for declaratory relief regarding duty to defend based on conclusion that insurer's reading of exclusion would render coverage illusory under policy).

### E.    Pollution Exclusion

The Insurers separately argue that coverage for the Underlying Actions is excluded by the Pollution Exclusions contained in their respective policies. The Pollution Exclusions generally exclude from coverage bodily injury arising out of the actual, alleged, or threatened discharge, dispersal, release, or escape of pollutants at any time.[7] The Pollution Exclusions also contain a

---

pleadings. ECF 101-1 at 5–6. The Insurers objected to the notice, arguing that this Court is not bound by unpublished state court decisions and that Pacific Shore did not argue that enforcement of the exclusions would render Pacific Shore's coverage illusory. ECF 102 at 2. Although a federal court is not bound by an unreported state trial court decision, it "may rely on it to the extent its reasoning is persuasive." *Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388, 390 n.2 (9th Cir. 1988). The Court considered the same argument addressed by the same insurer defendants regarding an identical exclusion in *Regent Insurance Company et al v. Cambria Enterprises et al.*, No. 2:25-cv-04142-MRA-MAA (C.D. Cal. May 8, 2025), a case that, like this one, was noticed as related to *Hanover*. The Court therefore finds it appropriate to consider this argument here. *See United States v. Pedrin*, 797 F.3d 792, 798 (9th Cir. 2015) (Noon, J., dissenting) (recognizing that it is "within [the Court's] power to notice a meritorious argument unmentioned by counsel").

[7] Like the Silica Exclusions, the precise wording of the Pollution Exclusion varies by policy. For example, an Allied policy refers to "bodily injury arising out of . . . pollutants," ECF 66-1 at 53, whereas at least one of the Hanover policies refers to "bodily injury which would not have occurred in whole or in part but for . . . pollutants," ECF 70-5 at 36.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

locational requirement, which requires that such discharge occur:

> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured. . . .
>
> (b) At or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste; . . . [or]
>
> (d) At or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the pollutants are brought on or to the premises, site or location in connection with such operations by such Insured, contractor or subcontractor.

*See, e.g.*, ECF 68-3 at 156. Pacific Shore argues that the Pollution Exclusion does not apply because the alleged injuries do not satisfy the Pollution Exclusions' locational requirements, and because the Underlying Actions do not involve "traditional environmental pollution." ECF 74 at 15–18. The Insurers argue that the locational requirement is satisfied because the Underlying Plaintiffs received the products at issue from Plaintiffs' premises and worked indirectly on Plaintiffs' behalf by fabricating the product for its intended use, and the release of silica is pollution under binding case law. ECF 84 at 19–20.

Based on the complaints in the Underlying Actions, the Court agrees that the Insurers have not established that the location requirement necessary to trigger the application of the Pollution Exclusion has been satisfied. To prevail on its motion, Defendants "must clearly and conclusively establish on the face of the pleadings that there is no possibility that the Underlying Action[s] falls within the scope of the Policy." *Colorado W. Constr., Inc. v. Mt. Hawley Ins. Co.*, No. 523CV00307ODWSHKX, 2023 WL 8188436, at *3 (C.D. Cal. Nov. 27, 2023). Thus, to avail themselves of the Pollution Exclusion, the Insurers would need to conclusively establish that every single Underlying Plaintiff performed work at a site (1) owned, occupied, or rented by Pacific Shore, (2) used by Pacific Shore for waste handling, or (3) where Pacific Shore or Pacific Shore's contractors or subcontractors were performing operations. And the Court cannot identify any allegations in the Underlying Actions that satisfy any of those categories.

Mr. Quiroz, for example, alleges that he inhaled silica-containing dust during his employment at Bernardino Sanchez fabrication shop in San Fernando, California, and 3 Bro Marble in Lawndale, California. ECF 64-1 ¶¶ 106–09. Mr. Quiroz does not allege—and the Insurers do not contend—that the shops where he worked were owned or occupied by, or rented or loaned to, Pacific Shore. Similarly, Mr. Quiroz does not allege—and the Insurers do not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

contend—that Pacific Shore ever used those shops for the handling, storage, disposal, processing or treatment of waste.   And finally, the Court cannot conclude, based on the allegations, that these shops qualify as a "premises, site or location on which any *insured* or any *contractors or subcontractors* working directly or indirectly on any insured's behalf are performing operations." ECF 67-2 at 101 (emphasis added).

The Insurers incorrectly contend that as to the third category concerning contractors or subcontractors, "only an 'indirect' connection is required to bring the underlying injuries within the express language of the exclusion."   ECF 84 at 18.   That argument would read the Pollution Exclusion's reference to "contractors or subcontractors" out of the Policies and render that language meaningless.   *C.J. Segerstrom & Sons v. Lexington Ins. Co.*, 724 F. Supp. 3d 1052, 1065 (C.D. Cal. 2023) ("[C]ourts are obligated to give effect to every part of an insurance policy, [and] such policies should not be read in such a way as to render some of its terms meaningless." (citing *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 827–28 (1990))).   It is insufficient for the Insurers to insist that Mr. Quiroz worked indirectly on Pacific Shore's behalf without *also* establishing that the site is one where Pacific Shore (the insured) or *contractors* or *subcontractors* working on Pacific Shore's behalf performed work.   For example, one plausible version of the underlying facts is that 3 Bro Marble purchased stone products from Pacific Shore, and Mr. Quiroz fabricated those products in his capacity as an employee of 3 Bro Marble.   In that scenario, which the Insurers have not ruled out, there are no "contractors or subcontractors" working on behalf of Pacific Shore, either directly or indirectly.   Although Mr. Quiroz alleges that Pacific Shore is in the business of "marketing and distributing" stone products, he does not allege that there is any contractual relationship between Pacific Shore and the fabrication shops at which he was exposed to toxins that would bring his injuries within the scope of the Pollution Exclusion.

Setting aside the locational requirement, the Court is not persuaded that the exposure to toxic substances alleged by the Underlying Plaintiffs satisfies the "traditional environmental pollution" test.   The parties agree that the applicability of the Total Pollution Exclusion is governed by the California Supreme Court's opinion in *MacKinnon v. Truck Insurance Exchange*, 31 Cal. 4th 635 (2003).   ECF 63-1 at 14; ECF 74 at 12.   In *MacKinnon*, a tenant in plaintiff MacKinnon's building died from pesticide exposure after MacKinnon hired a pest control company to exterminate yellow jackets.   *Id.* at 640.   When the parents of the tenant sued MacKinnon for wrongful death, MacKinnon tendered his defense to Truck Insurance Exchange pursuant to the comprehensive general liability insurance policy Truck Insurance Exchange had issued him.   *Id.*   Truck Insurance Exchange concluded that the pollution exclusion in the policy precluded coverage for the wrongful death action.   The Court held that Truck Insurance Exchange's reading of the exclusion, which would extend to virtually any substance that could be characterized as irritants or contaminants, was untenable.   *Id.* at 649.   The Court further "limit[ed] the scope of the pollution exclusion to injuries arising from events commonly thought

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

of as pollution, i.e., environmental pollution." *Id.* at 653. Applying that standard, the Court held that "[w]hile pesticides may be pollutants under some circumstances, it is unlikely a reasonable policyholder would think of the act of spraying pesticides under these circumstances as an act of pollution." *Id.* at 654. Under *MacKinnon*, the Court must "put itself in the position of a layperson" to determine whether a pollution exclusion applies to a given injury-causing event. *Id.* at 649.

Applying *MacKinnon*, a California Court of Appeal held that "the widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations most assuredly is what is 'commonly thought of as pollution' and 'environmental pollution.'" *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480, 486 (2005). The *Garamendi* court rejected the notion that there must be a showing of "wholesale environmental degradation . . . to constitute pollution." *Id.* at 486.

Yet, in *American Zurich Insurance Co. v. James N. Gray Co.*, the court found that negligent demolition work that caused silica dust to enter the air was not an activity "traditionally thought of as pollution under *MacKinnon*'s guiding principles," in part based on the court's observation that the release of silica dust was not "widespread." No. SACV131966AGJPRX, 2014 WL 11430928, at *4 (C.D. Cal. July 25, 2014). The court distinguished *Garamendi* by pointing out that "*Garamendi*'s facts reflect a situation where dust clouds from construction-related activities could be thought of as traditional pollution," and "[t]he *Garamendi* court speaks of 'the widespread dissemination of silica dust.'" *American Zurich*, 2014 WL 11430928, at *5 (quoting *Garamendi*, 127 Cal. App. 4th at 486). Unlike *Garamendi*, where the dust purportedly traveled over "large distance," the *American Zurich* court "ha[d] no reason to understand the impact of the toxins released as so widespread." *American Zurich*, 2014 WL 11430928, at *5.

In *Travelers Property Casualty Co. of America v. City of Los Angeles Harbor Department*, No. CV 15-7799-GW(AJWX), 2016 WL 11520822 (C.D. Cal. Sept. 9, 2016), the court reviewed several decisions by state and federal courts applying *MacKinnon* and synthesized the relevant considerations to determine whether an injury-causing event would commonly be thought of as pollution from a layman's perspective: (1) whether the harm resulted from the by-product of an industrial operation; (2) whether the contaminant in question is regulated, and (3) whether the alleged polluter was aware of the dangers of the contaminant. *Id.* at *4. Applying those factors, the court denied the insurer's motion for summary judgment because although the creosote, the chemical at issue, was regulated by the Environmental Protection Agency, "its release due to the accidental fire . . . would . . . not comport with the common understanding of the word 'pollute.'" *Id.* at *5.

Here, the Insurers rely on *Garamendi*, as well as several out-of-circuit decisions, to argue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

that silica is a pollutant within the meaning of the exclusion and that widespread dissemination is not required. ECF 63-1 at 15–16. Pacific Shore argues that the Pollution Exclusions do not apply to exposure to chemicals through the ordinary use of products in the normal course of business. ECF 74 at 16–17.

Upon consideration of the parties' arguments and the caselaw discussed above, the Court concludes whether a layperson would view the injury-causing events in the Underlying Actions as pollution is a question unsuitable for resolution in the instant Motion. As discussed above, the Underlying Plaintiffs were allegedly injured by numerous different toxic substances, including silica, various metals, and VOCs. Although the Insurers correctly point out that "widespread" dissemination is not necessary, courts have instructed that whether the dissemination of the substance was "widespread" is relevant to whether a layperson would commonly think of such dissemination as pollution. *See American Zurich*, 2014 WL 11430928, at *5. Because the Underlying Actions arise from localized exposures, this case is distinguishable from *Garamendi* for the same reasons articulated by the court in *American Zurich*, and the Court cannot definitively conclude that such exposures would "comport with the common understanding of the word 'pollute.'" *Travelers*, 2016 WL 11520822, at *5. Indeed, one court in this district recently reached the same conclusion, finding that "*Garamendi* does not settle the issue" because the Underlying Actions "could well differ on the degree of alleged dissemination they feature." *Cambria Co. LLC v. Philadelphia Indem. Ins. Co.*, 2:24-CV-01913-MEMF-MBK, 2026 WL 776300, at *11 (C.D. Cal. Mar. 17, 2026).

Drawing all reasonable inferences in Pacific Shore's favor, the Court concludes that Pacific Shore has demonstrated the existence of a potential for coverage—*i.e.*, the existence of injuries in the Underlying Actions that would not fall within the scope of the Pollution Exclusions. The Insurers are therefore not entitled to judgment on the pleadings.

## F.    Duty to Indemnify

"Where there is a duty to defend, there *may be* a duty to indemnify." *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal. 4th 945, 958 (2001). "The duty to indemnify arises after a judgment has been entered against the insured on a theory which is in fact, rather than merely potentially, covered by the policy." *Oruna v. Burlington Ins. Co.*, No. 222CV03425SPGGJSX, 2023 WL 5667539, at *10 (C.D. Cal. June 6, 2023) (citing *Lloyd's*, 24 Cal. 4th at 958). The Court therefore denies the Insurers' Motion as unripe to the extent that it concerns its duty to indemnify Pacific Shore.

To be clear, the Court's denial of the Insurers' Motion is not a conclusive determination that coverage under the Policies has been established. Rather, the outcome reached by the Court is based upon its conclusion that, at the present stage, the injuries alleged in the Underlying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-04370-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Pacific Shore Stones, LLC, et al. v. Allied Property & Casualty Co., et al.* | | |

Actions are potentially covered under the Policies.  In any given Underlying Action, if it is determined that the plaintiff's injuries were in fact caused by substances that fall within the Silica Exclusion or Pollution Exclusion, the Insurers may at that point be able to show that "no claim can in fact be covered," and the duty to defend would be extinguished.  *Buss*, 16 Cal. 4th at 46.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings [63] is **DENIED.**

**IT IS SO ORDERED.**

___  :  ___

Initials of Deputy Clerk        mku